EXHIBIT A

County Court at Law #2

## Case Summary

### Case No. C-1-CV-23-002440

| | | | |
|---|---|---|---|
| **FlashParking, Inc., Plaintiff VS. Michael MacDonald, Defendant** | § § § | Location: Judicial Officer: Filed on: | **County Court at Law #2** **SHEPPERD, ERIC M** **06/09/2023** |

---

### Case Information

| | |
|---|---|
| Case Type: | Damages - Other Injury |
| Case Status: | **06/09/2023   Pending** |

---

### Party Information

| | | |
|---|---|---|
| | | *Lead Attorneys* |
| **Plaintiff** | **FlashParking, Inc.** | **GILSTRAP, LESSIE CAMPBELL** *Retained* |
| **Defendant** | **MacDonald, Michael Sellers** | |

---

### Case Events

| | |
|---|---|
| 06/09/2023 | OPN:CV ORIGINAL PETITION |
| 06/09/2023 | E-Filed Petition *2029.06.09 Pl's Original Petition And Application for TRO, TI and PI* |
| 06/12/2023 | ISS:CV CITATION *IN PERSON* Party:   Defendant MacDonald, Michael Sellers |
| 06/12/2023 | ISS:CV TEMPORARY RESTRAINING ORDER PROTECTIVE ORDER *IN PERSON* Party:   Defendant MacDonald, Michael Sellers |
| 06/12/2023 | ORD:CV TEMPORARY RESTRAINING ORDER    (Judicial Officer: SHEPPERD, ERIC M) |
| 06/12/2023 | MSC:CV REQUEST FOR CITATION *AND WRIT OF TEMPORARY RESTRAING ORDER* |
| 06/15/2023 | ORD:CV TEMPORARY RESTRAINING ORDER    (Judicial Officer: SHEPPERD, ERIC M) *amended* |
| 06/20/2023 | ISS:CV TEMPORARY RESTRAINING ORDER PROTECTIVE ORDER *Emailed to gazeredo@gilstraplawgroup.com* |
| 06/20/2023 | Request *2023.06.20 Request for Issuance of Writ* |
| 06/30/2023 | PLD:CV ENTRY OF APPEARANCE *Notice of Appearance of Kirsten M. Schneider on behalf of Defendant MacDonald* |
| 06/30/2023 | MOT:CV FOR LEAVE *motion for leave to appear and participate in case pro hac vice* |

**County Court at Law #2**

## Case Summary

### Case No. C-1-CV-23-002440

06/30/2023   MOT:CV OTHER
*Motion for Enlargement of Time to Appear and Show Cause*

07/05/2023   Notice
*Amended Notice of Appearance*

07/05/2023   MSC:CV AMENDED FILING
*Amended Notice of Appeqarance*

07/05/2023   PLD:CV SPECIAL APPEARANCE
*MOTION FOR SPECIAL APPEARANCE*

07/06/2023   ORD:CV PROPOSED ORDER/JUDGMENT CT2
*TEMPORARY INJUNCTION*

C-1-CV-23-002440

Filed: 6/9/2023 11:27 AM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Tyler Hohle

CAUSE NO. _____

| | | |
|---|---|---|
| FLASHPARKING, INC., | § | THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. ____ |
| | § | |
| MICHAEL SELLERS MACDONALD, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

**PLAINTIFF'S ORIGNAL PETITION AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND
TEMPORARY AND PERMANENT INJUNCTION**

FlashParking, Inc., Plaintiff, files this, its Original Petition and Application for Temporary

Restraining Order and Temporary and Permanent Injunction against Defendant Michael Sellers

MacDonald ("Defendant" or MacDonald") as follows:

## I. DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 3 pursuant to Rule 190.4 of the

Texas Rules of Civil Procedure.

2. Plaintiff FlashParking, Inc. ("Plaintiff" or "FlashParking") is a Delaware

corporation with its principal place of business in Travis County, Texas.

3. Defendant MacDonald is an individual residing in Fairfield County, Connecticut

and may be served at his home address of 1509 Brookside Dr., Fairfield, CT 06824, or wherever

he may be found.

## II. JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper because the amount in controversy exceeds the

minimum jurisdictional limits of this Court.

5. Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks non-monetary relief

1

and monetary relief of less than $75,000.

6.      Venue is proper in Travis County, Texas because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Travis County.  Tex. Civ. Prac. & Rem. Code §15.002.

### III. FACTS

7.      FlashParking is an Austin-based company that develops and sells software and hardware to assist its customers with parking solutions across Texas and the United States.  Exhibit A-1, ¶3.

8.      In August 2022, Defendant MacDonald became the Director of Product Operations for FlashParking.  *Id.*, ¶4.  In this position, MacDonald was responsible for working on and developing the signage for on-site payments at parking locations, focusing on checkout sign interactions, functionality for signage and developing a unified merchandizing kit across FlashParking's multiple products. [1] *Id.*

9.      In his role, MacDonald was exposed and had access to highly confidential information concerning FlashParking's business operations.  *Id.*, ¶5. Specifically, MacDonald had access to FlashParking's highly confidential business information, including but not limited to operating procedures, marketing, advertising, and statistics reflecting parking durations, rates, capacities, and hours of operation for millions of parking transactions at thousands of parking locations across Texas and the United States.  *Id.*  This information is highly sensitive and critical to FlashParking's ability to offer its unique products and services and maintain its competitive edge in the marketplace. *Id.*

---

[1] As part of his job duties, MacDonald traveled to Texas.

10.   On May 24, 2023, FlashParking informed MacDonald that his position would be eliminated as part of a reduction in force.  *Id.*, ¶6.  After the meeting, FlashParking accessed MacDonald's FlashParking's email account and discovered that MacDonald deleted all his emails. *Id.*  FlashParking became concerned that MacDonald may have stolen data from FlashParking and therefore began to recover the deleted emails.  *Id.*  On May 25, 2023, after recovering the deleted emails, FlashParking discovered that on April 21, 2023, MacDonald sent an email from his FlashParking email to his personal email account containing records of his exchanges with ChatGPT or a similar artificial intelligence platform ("ChatGPT") which stated, in part:

. . .

**I'd like to start a company**.

. . .

Let's chat about my company idea and see if we can perfect the business model . . . I have a few separate ideas . . .

Idea 2- **I have access to information about 50,000,000 parking transactions at 10,000 parking locations across the U.S. This data includes search inquiries about available parking down to a specific point of interest as well as transactional data including parking durations, and parking rates. I also have information about the physical characteristics of the parking location like capacity and hours.**

**Idea 2 involves using the data I have access to** so I can identify parking locations or neighborhoods with parking assets that are underperforming compared to other nearby locations so I can acquire them **. . . .**

*See Id.*; Ex. A-1.

11.   FlashParking then dug deeper into MacDonald's activity with data, and discovered that on April 19, 2023, MacDonald downloaded data from Looker (a tool used to query, summarize, and visualize data) related to over 4,000,000 FlashParking digital customer

transactions, including highly confidential statistics related to customer use such as parking locations (including addresses), capacities, total number of transactions and total amounts of gross revenue. *Id.*, ¶7. The data set contains information that MacDonald admitted he possessed in his exchange with ChatGPT. This information is highly confidential information belonging to FlashParking and the maintenance of its confidentiality is critical to FlashParking's ability to maintain its competitive edge in the marketplace. *Id.*

12.     FlashParking then discovered that MacDonald had uploaded the data to his FlashParking Google Drive in 3 different formats (a Numbers file, an Excel file and a Google Sheet). *Id.*, ¶8. Finally, FlashParking found two emails on April 19, 2023 from Google stating that MacDonald had signed into his FlashParking account "from a new Mac device." *Id.*, ¶9.; Ex. A-2. These notices confirm that MacDonald connected a personal device to the Google drive containing FlashParking's confidential information which would allow him to download the confidential information to his personal device. *Id.*

13.     MacDonald has not only downloaded 4,000,000 parking transactions from FlashParking's databases, but based on his own admissions using ChatGPT, MacDonald is also clearly intent on using this and other highly confidential information obtained through his employment with FlashParking to give himself a competitive advantage in starting a new business.

## IV.     CAUSES OF ACTION

14.     **Violation of the Texas Uniform Trade Secrets Act.**   MacDonald has misappropriated FlashParking's trade secrets in violation of Tex. Civ. Prac. & Rem. Code Ch. 134A resulting in immediate and imminent harm to FlashParking in Texas and elsewhere for which there is no adequate remedy at law.

4

15.     **Attorneys' Fees.**  Plaintiff seeks to recover its reasonable and necessary attorneys'

fees pursuant to Tex. Civ. Prac. & Rem. Code § 134A.005 because MacDonald's actions in

downloading FlashParking's trade secrets--i.e., 4 million transactions to his personal Mac device

for his own business purposes and then asking ChatGPT for assistance with his scheme, was clearly

willful and malicious and with conscious disregard of the rights of FlashParking.

## GROUNDS FOR INJUNCTIVE RELIEF

16.     Flash Parking seeks to enjoin MacDonald, and all those acting in concert with him,

from engaging in the following activities, directly or indirectly:

a.      disclosing to any person or using in any way any Confidential Information belonging to FlashParking.   "Confidential Information" means any information that relates to FlashParking's actual or anticipated business or research and development, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the FlashParking's products or services and markets therefor, customer lists and customers, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information including but not limited to the 4 million transactions that MacDonald downloaded from FlashParking and any other information belonging to FlashParking;

b.      tampering, altering, and/or erasing any computer data, files, folders, documents. Communications, or any other information that may be used as evidence in this case; and

c.      preventing or prohibiting the recovery of any Confidential Information belonging to FlashParking.

17.     FlashParking is likely to succeed on the merits because MacDonald stole and

misappropriated FlashParking's highly confidential information in violation of the Texas Uniform

Trade Secrets Act.  If MacDonald is not enjoined FlashParking will suffer irreparable injury in the

form of losing their competitive edge in the marketplace and goodwill for which there is no

adequate remedy at law.

## PRAYER

For these reasons, FlashParking requests that the Court require MacDonald to appear and show cause why its application for temporary restraining order and a temporary and permanent injunction should not be granted, and upon hearing, that the application should be granted as set forth above.  FlashParking further requests that the Court grant its request for attorneys' fees and grant such other and further relief to which it shows itself to be justly entitled.

Respectfully submitted,

**GILSTRAP LAW GROUP PC**
1801 E. 51st Street, Suite 365-295
Austin, Texas 78723
Telephone:  (512) 813-2061

By:    */s/ Lessie C. Gilstrap*
Lessie C. Gilstrap
State Bar No.  24012630
lessie@gilstraplawgroup.com
Glorieni M. Azeredo
State Bar No. 24077840
gazeredo@gilstraplawgroup.com

ATTORNEY FOR PLAINTIFF
FLASHPARKING, INC.

6

**EXHIBIT A**

CAUSE NO. _____

| | | |
|---|---|---|
| FLASHPARKING, INC., | § | THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. ____ |
| | § | |
| MICHAEL SELLERS MACDONALD, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## DECLARATION OF ANTHONY BROAD CRAWFORD

1. My name is Anthony Broad Crawford. I am over the age of 18 and am competent in all respects to make this verification. I am currently the Chief Technical Officer of FlashParking, Inc.

2. Through my work in my capacity as Chief Technical Officer of FlashParking, Inc. and through my review of FlashParking's records and documents, I have personal knowledge of the factual background underlying the statements herein, all of which are true and correct.

3. FlashParking is an Austin-based company that develops and sells software and hardware to assist its customers with parking solutions across Texas and the United States.

4. In August 2022, Defendant MacDonald became the Director of Product Operations for FlashParking. In this position, MacDonald was responsible for working on and developing the signage for on-site payments at parking locations, focusing on checkout sign interactions, functionality for signage and developing a unified merchandizing kit across FlashParking's multiple products. [1]

5. In his role, MacDonald was exposed and had access to highly confidential information concerning FlashParking's business operations. Specifically, MacDonald had access to FlashParking's highly confidential business information, including but not limited to operating procedures, marketing, advertising, and statistics reflecting parking durations, rates, capacities, and hours of operation for millions of parking transactions at thousands of parking locations across Texas and the United States. This information is highly sensitive and critical to FlashParking's ability to offer its unique products and services and maintain its competitive edge in the marketplace.

---

[1] As part of his job duties, MacDonald traveled to Texas.

6.      On May 24, 2023, FlashParking informed MacDonald that his position would be eliminated as part of a reduction in force.  After the meeting, FlashParking accessed MacDonald's FlashParking email account and discovered that MacDonald deleted all his emails.  Concerned that MacDonald may have stolen data from FlashParking, FlashParking recovered the emails.  On May 25, 2023, FlashParking discovered that on April 21, 2023, MacDonald sent an email from his FlashParking email account to his personal email account containing records of his exchanges with ChatGPT or a similar artificial intelligence platform ("ChatGPT").  A true and correct copy of that email is attached hereto as Exhibit A-1.  In relevant part, the email detailed the following inquiries to ChatGPT:

. . .

"I'd like to start a company.

. . .

Let's chat about my company idea and see if we can perfect the business model . . . I have a few separate ideas . . .

Idea 2- I have access to information about 50,000,000 parking transactions at 10,000 parking locations across the U.S. This data includes search inquiries about available parking down to a specific point of interest as well as transactional data including parking durations, and parking rates. I also have information about the physical characteristics of the parking location like capacity and hours.

Idea 2 involves using the data I have access to so I can identify parking locations or neighborhoods with parking assets that are underperforming compared to other nearby locations so I can acquire them. . . .

7.      FlashParking discovered that on April 19, 2023, MacDonald downloaded data from Looker (a tool accessible by FlashParking employees used to query, summarize and visualize data) related to over 4,000,000 FlashParking digital customer transactions, including highly confidential statistics related to customer use such as parking locations (including addresses), capacities, total number of transactions and total amounts of gross revenue.  The data set contains information that MacDonald admitted he possessed in his exchange with ChatGPT.  This information is highly confidential information belonging to FlashParking and the maintenance of its confidentiality is critical to FlashParking's ability to maintain its competitive edge in the marketplace.

8.    FlashParking then discovered that MacDonald had uploaded this data in three different formats (a Numbers file, an Excel file, and a Google Sheet) to his FlashParking Google Drive.

9.    FlashParking then found two email notices dated April 19, 2023 from Google to MacDonald's FlashParking email account reflecting that MacDonald had signed into his FlashParking Google Drive from a new Mac device.  These notices confirm that MacDonald connected a personal device to the Google drive containing FlashParking's confidential information which would allow him to download the confidential information to his personal device. True and correct copies of the two email notices are attached hereto as Exhibit A-2.

My name is Anthony Broad Crawford, my date of birth is ▮▮▮▮▮▮, and my work address is 1533 Barclay Boulevard, Buffalo Grove, IL 60089.  As authorized by section 132.001 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Cook County, Illinois on June 9, 2023.

DocuSigned by:

*Anthony Broad Crawford*

6B49C786C271AFC...

Anthony Broad Crawford

 **FLASH**

Michael MacDonald <mac@arrive.com>

---

## (no subject)

**Michael MacDonald** <mac@arrive.com>
To: Mike MacDonald <macovich.macdonald@gmail.com>

Fri, Apr 21, 2023 at 11:28 AM

---

hello

---

Hello! How can I assist you today?

---

I'd like to start a company

---

UNOFFICIAL

That's great! Starting a company can be an exciting and rewarding experience. There are many things to consider when starting a company, such as your business idea, target market, funding, and legal requirements. Here are some general steps to consider:

1. Develop a business idea: Think about what you want your company to do and how it can solve a problem or meet a need in the market. Conduct research to determine if there is a demand for your product or service.

2. Create a business plan: Write a detailed plan outlining your business goals, target market, competition, marketing strategy, financial projections, and more. This will serve as a roadmap for your company and help you secure funding.

3. Determine your legal structure: Decide whether to incorporate your business as a sole proprietorship, partnership, LLC, or corporation. Each legal structure has different tax implications and liability protection.

4. Register your business: Register your business with your state government and obtain any necessary licenses and permits.

5. Secure funding: Determine how you will fund your business, whether through personal savings, loans, or investors.

6. Set up your business operations: Establish a physical or virtual location for your business, hire employees if necessary, and set up your accounting and legal systems.

7. Launch and market your business: Start selling your product or service and promote your business through marketing and advertising.

Remember, starting a company takes time, effort, and dedication. It is important to do your research and seek advice from experts, such as lawyers, accountants, and business consultants, to ensure your business is set up for success. Good luck on your entrepreneurial journey!

Lets chat about my company idea and see if we can perfect the business model

Of course! I'm happy to discuss your company idea and help you refine your business model. Can you provide more details about your business idea? What industry are you interested in? What problem are you solving or need are you addressing?

I have a few separate ideas

Great! Please feel free to share your ideas and we can discuss each one in more detail.

Idea 1- Use Lidar to scan parking locations to collect the physical characteristics and then connect that location to the neighborhood around it by using AI and machine learning to create an AR map. This AR map would be accessed by scanning a QR code onsite and would update with way finding information about public transportation as well as details about restaurants, banks, grocery stores, etc.

That's an interesting idea! It sounds like you're looking to create a solution that helps people find their way around a specific area by providing them with detailed information about nearby businesses and attractions.

Using Lidar to scan parking locations and collect physical characteristics is a unique approach. It could provide accurate and detailed information about parking lots, which would be useful for creating an AR map.

In terms of the AR map, it's important to consider how you would collect and present the information. You mentioned using AI and machine learning to create the map, which is a good approach. However, you'll need to ensure that the data is accurate and up-to-date. Additionally, you'll need to consider the user experience and make sure that the AR map is easy to use and provides useful information.

To monetize this idea, you could potentially charge businesses for premium placement on the AR map or charge users for accessing the map. However, you'll need to consider the balance between monetization and user experience.

Overall, I think this is a promising idea, and with some more research and development, it could be a valuable tool for people looking to navigate a specific area.

Idea 2- I have access to information about 50,000,000 parking transactions at 10,000 parking locations across the U.S. This data includes search inquiries about available parking down to a specific point of interest as well as transactional data including parking durations, and parking rates. I also have information about the physical characteristics of the parking location like capacity and hours. Idea 2 involves using the data I have access to so I can identify parking locations or neighborhoods with parking assets that are underperforming compared to other nearby locations so I can acquire them.

That's an interesting idea as well! It sounds like you have a lot of valuable data about parking transactions and locations across the U.S.

Using this data to identify underperforming parking assets could be a smart approach. By acquiring these assets, you could potentially improve their performance and generate more revenue. However, it's important to consider the potential costs associated with acquiring and managing parking assets. You'll need to conduct a thorough analysis to determine the feasibility of this idea.

One potential challenge you may face is acquiring the parking assets themselves. Some parking locations may be owned by government agencies or private entities that are not interested in selling. Additionally, you'll need to consider the potential competition from other companies that may be interested in acquiring underperforming parking assets.

Overall, I think this idea has potential, but it will require a lot of research and analysis to determine the feasibility and potential ROI. Additionally, you'll need to consider the potential challenges and obstacles you may face along the way.

Idea 3- I create a franchise for parking assets. I use my ability to Lidar scan a location to optimize it's layout and provide merchandizing and operation capabilities.

UNOFFICIAL

That's an interesting idea as well! It sounds like you're looking to create a franchise model that provides a turnkey solution for parking asset owners.

Using Lidar to optimize the layout of parking locations is a smart approach. It could help improve the efficiency and effectiveness of the parking assets, which would be beneficial for both the asset owner and the users. Additionally, providing merchandising and operational capabilities could help improve the user experience and generate additional revenue for the asset owner.

To make this idea a reality, you'll need to create a comprehensive franchise model that includes training, support, and marketing materials for franchisees. Additionally, you'll need to consider the potential costs associated with launching a franchise model, such as legal fees and marketing expenses.

Overall, I think this is a promising idea that could provide a valuable service for parking asset owners. With some additional research and development, it could be a successful franchise model.

What do you require in order to generate a comprehensive franchise model for me?

In order to generate a comprehensive franchise model, I would need to work with you closely to gather information about your business and your goals for the franchise. Here are some of the steps we would need to take:

1. Conduct a thorough analysis of your business: Before we can create a franchise model, we need to understand your business and how it operates. We'll need to gather information about your current operations, revenue streams, and profitability.

2. Determine the franchise model: Once we understand your business, we'll need to determine the best franchise model for your business. This will involve deciding on the type of franchise, such as a single-unit or multi-unit franchise, as well as the level of support and training you'll provide to franchisees.

3. Develop a franchise agreement: We'll need to work with legal professionals to create a comprehensive franchise agreement that outlines the terms and conditions of the franchise. This will include details about the fees and royalties, as well as the rights and responsibilities of the franchisee and franchisor.

4. Develop training and support materials: We'll need to develop comprehensive training and support materials for franchisees. This may include videos, manuals, and webinars, as well as ongoing support for franchisees.

5. Develop marketing materials: We'll need to develop marketing materials to help promote the franchise to potential franchisees. This may include brochures, flyers, and online ads.

6. Launch and manage the franchise: Once the franchise model is developed, we'll need to launch and manage the franchise. This will involve recruiting and training franchisees, providing ongoing support, and managing the franchise network.

Of course, each franchise model is unique, and the process may vary depending on your specific needs and goals. However, these are the general steps we would need to take to develop a comprehensive franchise model for your business.

ok, lets get started

Great! The first step is to conduct a thorough analysis of your business. Can you tell me more about your business, including its operations, revenue streams, and profitability? Additionally, what are your goals for the franchise, and what level of support and training do you envision providing to franchisees?

I provide an operating system that could be used for a parking lot franchise:
Parking Lot Design: The franchisor would provide the franchisee with a standardized parking lot design, including the layout of parking spaces, entrance and exit locations, signage, and lighting.
Equipment and Maintenance: The franchisor would provide the franchisee with a list of required equipment, such as payment machines, barriers, and security cameras. The franchisor would also provide guidelines for equipment maintenance and repairs.
Operating Procedures: The franchisor would provide the franchisee with a set of standard operating procedures for the parking lot, including guidelines for parking attendants, customer service, and safety protocols.
Customer Service: The franchisor would provide the franchisee with customer service training materials and guidelines for handling customer complaints, requests, and issues.
Marketing and Advertising: The franchisor would provide the franchisee with marketing and advertising materials, including signage, flyers, and promotional materials. The franchisor would also provide guidance on local marketing strategies to help the franchisee build their customer base.
Technology and Software: The franchisor would provide the franchisee with access to the franchisor's parking management software, including payment processing, data management, and reporting tools.
Financial Management: The franchisor would provide the franchisee with guidance on financial management, including budgeting, revenue tracking, and expense management.
By providing a standardized operating system, the franchisor can ensure that the franchisee is using best practices and procedures, which can help to ensure consistency and quality across all locations.

Thank you for providing this information. It sounds like you have a solid foundation for a parking lot franchise model.

The next step would be to determine the franchise model that would best suit your goals. Do you envision a single-unit or multi-unit franchise model? Will franchisees own or lease the land where the parking lots will be located?

Additionally, we would need to determine the fees and royalties that franchisees would pay, as well as the level of support and training that you would provide. Would you be providing ongoing support to franchisees, such as marketing and advertising support, software updates, and technical assistance? Would franchisees be required to attend training sessions or participate in ongoing education programs?

Once we have this information, we can begin to develop the franchise agreement and the training and support materials that franchisees will need.

---

Can you explain a single or multi unit franchise model?

---

Sure, I'd be happy to explain.

A single-unit franchise model is where the franchisee owns and operates a single unit of the franchise. In the case of your parking lot franchise, this would mean that each franchisee would own and operate a single parking lot location.

A multi-unit franchise model, on the other hand, allows franchisees to own and operate multiple units of the franchise. This could mean owning and operating multiple parking lots in different locations.

Both models have their advantages and disadvantages. The single-unit model is often easier to manage and can provide more control over the quality of each location. However, the multi-unit model can provide greater economies of scale and can be more profitable in the long run.

Ultimately, the decision on which model to pursue will depend on your goals for the franchise and the resources available to support it.

---

I'd be more interested in a multi-unit franchise model

---

Great! A multi-unit franchise model can be a great way to grow your business and provide franchisees with opportunities to expand their portfolio of parking lot locations.

For a multi-unit franchise model, you'll need to develop a system that allows franchisees to efficiently manage and operate multiple locations. This could involve providing centralized support services, such as marketing, accounting, and IT, as well as a scalable technology infrastructure that can support multiple locations.

You'll also need to determine the financial requirements for franchisees who want to own multiple locations. This could include setting minimum net worth and liquid capital requirements, as well as determining the franchise fees and royalties that franchisees will be required to pay for each additional location.

Finally, you'll need to develop a comprehensive training and support program for franchisees who own multiple locations. This could include providing ongoing training and education on topics such as financial management, marketing and advertising, and operational efficiency.

Overall, a multi-unit franchise model can be a great way to grow your business and provide franchisees with opportunities for success.

What does a system to efficiently manage and operate multiple locations look like for this business?

A system to efficiently manage and operate multiple parking lot locations could include the following components:

1. Centralized Support Services: The franchisor would provide centralized support services to franchisees to ensure that each location is operating effectively and efficiently. These services could include marketing, accounting, IT, and customer support.

2. Technology Infrastructure: The franchisor would provide a technology infrastructure that can support multiple locations, such as a centralized parking management software system. This system would allow franchisees to manage their parking lots, process payments, and monitor key metrics such as occupancy rates and revenue.

3. Standard Operating Procedures: The franchisor would provide a set of standard operating procedures that franchisees can use to manage their parking lots. These procedures would ensure consistency across all locations and would help to ensure that each location is operating effectively.

4. Training and Education: The franchisor would provide ongoing training and education to franchisees to ensure that they have the skills and knowledge needed to manage multiple parking lots. This training could cover topics such as financial management, marketing and advertising, and operational efficiency.

5. Financial Management: The franchisor would provide guidance and support to franchisees to help them manage the financial aspects of their parking lots, such as budgeting, revenue tracking, and expense management.

Overall, the goal of a system to efficiently manage and operate multiple parking lot locations would be to provide franchisees with the resources and support they need to run their businesses effectively and efficiently. By providing a comprehensive system, the franchisor can ensure that each location is operating at its full potential and can help franchisees to achieve long-term success.

what does an ideal centralized parking management software system look like for this franchise?

An ideal centralized parking management software system for a parking lot franchise would include the following features:

1. **Parking Lot Management:** The system should allow franchisees to manage their parking lots, including setting rates, configuring parking rules, and tracking occupancy rates.

2. **Payment Processing:** The system should include payment processing capabilities that allow customers to pay for parking using a variety of methods, including credit cards, mobile payments, and cash.

3. **Reservation System:** The system should allow customers to reserve parking spots in advance, either online or through a mobile app.

4. **Analytics and Reporting:** The system should provide analytics and reporting capabilities that allow franchisees to monitor key performance indicators such as occupancy rates, revenue, and customer satisfaction.

5. **Integration with other Systems:** The system should be able to integrate with other systems, such as accounting software, customer relationship management (CRM) software, and marketing automation tools.

6. **Mobile Access:** The system should be accessible through a mobile app that allows customers to pay for parking, reserve spots, and view information about available parking spots in real-time.

7. **Customer Support:** The system should provide customer support capabilities, including the ability to handle customer inquiries, complaints, and issues.

By providing these features, the centralized parking management software system can help franchisees to efficiently manage their parking lots, improve the customer experience, and drive revenue growth.

Provide me with a training plan that covers topics such as financial management, marketing and advertising, and operational efficiency for this franchise

Sure, here's an outline of a potential training plan for a multi-unit parking lot franchise:

1.  Financial Management Training:

| Basic accounting principles and financial statements | Budgeting and forecasting | Cash flow management | Understanding and analyzing key financial metrics (e.g., revenue, profit margin, occupancy rates) | Expense management and cost control strategies | Use of financial management software and reporting tools |
|---|---|---|---|---|---|

2.  Marketing and Advertising Training:

| Branding and brand management | Developing marketing and advertising strategies and tactics | Implementing and measuring marketing campaigns (e.g., social media, email marketing, direct mail) | Market research and competitive analysis | Sales and customer service training | Use of marketing automation tools and analytics software |
|---|---|---|---|---|---|

3.  Operational Efficiency Training:

| Standard operating procedures for parking lot management | Equipment and maintenance guidelines | Staff training and management | Safety and security protocols | Use of parking management software and reporting tools | Customer service and complaint resolution strategies | Best practices for operational efficiency and cost savings |
|---|---|---|---|---|---|---|

The training plan should also include hands-on experience and shadowing opportunities for new franchisees at existing locations, as well as ongoing training and support for existing franchisees to stay up-to-date on best practices and new technologies. In addition, regular meetings, webinars, and conferences can be used to share knowledge and facilitate communication between franchisees and the franchisor.

Provide me with best practices for operational efficiency and cost
savings for this franchise



Sure, here are some best practices for operational efficiency and cost savings for a multi-unit parking lot franchise:

1. Optimize Staffing Levels: Analyze traffic patterns and occupancy rates to ensure that staffing levels are optimized. Use technology such as automated payment machines to minimize the need for parking attendants, but also ensure that there are enough attendants to handle customer inquiries and issues.

2. Implement Energy-Saving Measures: Install energy-efficient lighting and equipment, and use timers or motion sensors to turn off lights when they are not needed. This can help to reduce energy costs and extend the life of equipment.

3. Use Predictive Maintenance: Implement a preventive maintenance program for equipment to ensure that repairs are made before they become major issues. Use data analytics to predict equipment failures and schedule maintenance accordingly, which can help to reduce downtime and repair costs.

4. Optimize Space Utilization: Use data analytics to identify underutilized parking spaces and adjust pricing or marketing strategies to increase utilization. This can help to maximize revenue and reduce the need for additional parking spaces.

5. Implement Cash Management Strategies: Implement cash management strategies to reduce the risk of theft and loss. Use secure payment machines that are regularly emptied and use armored car services to transport cash.

6. Leverage Technology: Use parking management software and reporting tools to track occupancy rates, revenue, and expenses across all locations. Use data analytics to identify trends and opportunities for improvement.

7. Negotiate Bulk Purchases: Negotiate bulk purchases of equipment and supplies across all locations to take advantage of volume discounts.

By implementing these best practices, a multi-unit parking lot franchise can achieve operational efficiency and cost savings, which can help to increase profitability and reduce risk.

DocuSign Envelope ID: 25CB60E0-67BD-48BF-9844-37DA5DEF387D

Create a 10 page training guide for this franchise that provides a set of
standard operating procedures that franchisees can use to manage
their parking lots as well as budgeting, revenue tracking, and expense
management for a parking lot operation franchise.



I am happy to help you create a 10-page training guide for your parking lot operation franchise. Here is an outline of the guide:

I. Introduction
A. Welcome
B. Purpose of the Guide
C. Target Audience

II. Overview of the Franchise
A. Brief history of the franchise
B. Mission and Vision statement
C. Core values
D. Branding and marketing strategy

III. Standard Operating Procedures for Parking Lot Management
A. Parking Lot Design
B. Equipment and Maintenance
C. Operating Procedures
D. Customer Service
E. Technology and Software
F. Financial Management

IV. Budgeting for a Parking Lot Operation Franchise
A. Overview of budgeting process
B. Identifying revenue sources
C. Estimating expenses
D. Creating a budget
E. Budget monitoring and review

V. Revenue Tracking and Expense Management
A. Tracking parking transactions
B. Analyzing revenue trends
C. Managing expenses
D. Financial reporting

VI. Marketing and Advertising for a Parking Lot Operation Franchise
A. Overview of marketing and advertising
B. Identifying target markets
C. Creating a marketing plan
D. Advertising strategies
E. Measuring marketing and advertising effectiveness

VII. Operational Efficiency for a Parking Lot Operation Franchise

A. Best practices for operational efficiency

B. Streamlining operations

C. Managing inventory and supplies

D. Staff training and development

E. Implementing technology and software for efficiency

VIII. Conclusion

A. Summary of the Guide

B. Final Thoughts

C. Resources and Contact Information

Please note that this is just an outline and not a full training guide. The guide would need to be developed in more detail, with specific procedures and guidelines for each section. If you would like me to create the full training guide for you, please let me know and we can discuss further details.

I'd like you to create the full training guide

I apologize for any confusion, but as an AI language model, I am not able to create a fully comprehensive and customized training guide for your specific franchise business. However, I can provide some guidance and suggestions for creating such a guide.

| 1. Begin by identifying the key operational procedures for managing a parking lot franchise. This could include procedures for maintaining and repairing equipment, managing staffing and customer service, handling financial transactions, and ensuring safety and security on the premises. | 2. Create step-by-step instructions for each procedure, including any necessary tools or equipment, timeframes, and safety precautions. | 3. Develop training materials, such as videos or written manuals, that clearly explain each procedure and provide examples of how to implement it. | 4. Incorporate best practices for operational efficiency and cost savings into the training guide, such as using energy-efficient lighting or implementing a preventative maintenance schedule. | 5. Develop a budgeting and financial management section that outlines key revenue streams, expenses, and profit margins for a parking lot operation. This could include instructions for tracking revenue and expenses, creating a budget, and analyzing financial statements. | 6. Incorporate marketing and advertising strategies into the training guide, such as developing local marketing plans and promoting the franchise through social media and online channels. | 7. Consider incorporating ongoing training and development opportunities for franchisees, such as webinars, workshops, and mentorship programs. | 8. [cut off] |

These are just a few suggestions for creating a comprehensive training guide for a parking lot franchise. It's important to customize the guide to your specific business model and franchise structure.

I'd like you to create this section of the training guide- IV. Budgeting
for a Parking Lot Operation Franchise

A. Overview of budgeting process

B. Identifying revenue sources

C. Estimating expenses

D. Creating a budget

E. Budget monitoring and review

IV. Budgeting for a Parking Lot Operation Franchise

A. Overview of Budgeting Process

Budgeting is an essential process for any business, including a parking lot operation franchise. A budget is a financial plan that outlines the expected revenues and expenses of the business over a specific period of time. The budgeting process involves identifying revenue sources, estimating expenses, creating a budget, and monitoring and reviewing the budget to ensure it remains on track.

B. Identifying Revenue Sources

To create an effective budget for a parking lot operation franchise, it is important to identify all potential revenue sources. These may include:

1. Parking fees: This is the primary revenue source for a parking lot operation franchise. It is important to determine the appropriate rate to charge for parking, based on factors such as location, demand, and competition.

2. Additional services: The franchisee may offer additional services to customers, such as car washes, detailing, or valet parking. These services can generate additional revenue for the franchise.

3. Advertising: The franchisee may sell advertising space within the parking lot or on parking tickets, generating revenue from advertisers.

C. Estimating Expenses

Once revenue sources have been identified, the franchisee must estimate expenses associated with operating the parking lot. These may include:

1. Rent or lease payments: The franchisee may need to pay rent or lease payments

2. Utilities: Utilities such as electricity, water, and gas must be factored into the budget.

3. Equipment: The franchisee must consider the cost of purchasing, maintaining, and repairing equipment

4. Staffing: The franchisee must consider the cost of hiring and training employees, as well as providing benefits

5. Marketing and advertising: The franchisee must consider the cost of marketing and

| for the parking lot location. | such as parking machines, barriers, and security cameras. | such as health insurance and retirement plans. | advertising the parking lot to potential customers. |
|---|---|---|---|

D. Creating a Budget

Once revenue sources and expenses have been identified and estimated, the franchisee can create a budget. The budget should include projected revenue and expenses for a specific period of time, such as a year or a quarter.

The budget should be detailed and include all sources of revenue and expenses. It should also take into account any potential risks or uncertainties that may affect the revenue or expenses.

E. Budget Monitoring and Review

Once the budget has been created, it is important to monitor and review it regularly to ensure it remains on track. The franchisee should compare actual revenue and expenses to the budgeted amounts on a regular basis, such as monthly or quarterly.

If the actual revenue or expenses deviate significantly from the budgeted amounts, the franchisee should take corrective action to address the issue. This may include adjusting parking rates, reducing expenses, or implementing new revenue-generating strategies.

Regular budget monitoring and review is critical to the success of a parking lot operation franchise, as it allows the franchisee to make informed decisions and adjust the business strategy as needed.

Please provide this part of the training guide- VII. Operational Efficiency for a Parking Lot Operation Franchise
A. Best practices for operational efficiency
B. Streamlining operations
C. Managing inventory and supplies
D. Staff training and development
E. Implementing technology and software for efficiency

VII. Operational Efficiency for a Parking Lot Operation Franchise

A. Best practices for operational efficiency

Operational efficiency is a key factor in the success of a parking lot operation franchise. Here are some best practices for improving efficiency:

1. Standardize operating procedures: Create a set of standardized operating procedures for all locations to ensure consistency in operations and improve efficiency.

2. Use technology: Implement parking management software and hardware to streamline processes and automate tasks such as payment processing, parking space monitoring, and inventory management.

3. Optimize layout and design: Use Lidar technology to optimize the layout and design of the parking lot, maximizing the number of parking spaces and improving traffic flow.

4. Monitor and analyze data: Use data analysis to identify areas where operational efficiency can be improved and make data-driven decisions to optimize performance.

B. Streamlining operations

Streamlining operations involves finding ways to reduce waste, minimize downtime, and maximize productivity. Here are some ways to streamline operations:

1. Identify inefficiencies: Conduct a thorough review of all processes and identify areas where improvements can be made.

2. Simplify processes: Simplify procedures where possible to reduce the likelihood of errors and delays.

3. Automate tasks: Use technology to automate tasks such as payment processing and parking space monitoring.

4. Use data analysis: Use data analysis to identify bottlenecks and areas where time and resources can be saved.

C. Managing inventory and supplies

Effective inventory management is critical to minimizing waste and reducing costs. Here are some tips for managing inventory

and supplies:

1. Regularly review inventory: Regularly review inventory levels and usage to identify areas where supplies can be reduced or eliminated.

2. Standardize supplies: Use standardized supplies to reduce the likelihood of errors and minimize the need for multiple suppliers.

3. Use just-in-time inventory: Use just-in-time inventory to minimize storage costs and reduce waste.

D. Staff training and development

Effective staff training and development is essential to improving operational efficiency. Here are some tips for staff training and development:

1. Standardize training procedures: Create a standardized training program for all employees to ensure consistency in training.

2. Use technology for training: Use online training programs and tools to provide employees with flexible and convenient training options.

3. Regularly review performance: Regularly review employee performance and provide feedback to identify areas for improvement.

4. Offer career development opportunities: Provide opportunities for career development and advancement to retain top-performing employees.

E. Implementing technology and software for efficiency

Technology and software can be used to improve operational efficiency by automating tasks and streamlining processes. Here are some tips for implementing technology and software:

1. Choose the right software: Choose parking management software that meets the specific needs of the franchise.

2. Train employees on software: Provide comprehensive training on the software to ensure all employees are using it effectively.

3. Regularly update software: Regularly update the software to ensure it is running at optimal performance and to take advantage of new features and capabilities.

DocuSign Envelope ID: 25CB60E0-67BD-48BF-9944-37DA5DEF387D

Provide me with the following for the franchise. The company name is
Bingo, for part of advertising, we'll utilize the 'in' & 'go' part of the
Bingo name.



Sure, here are a few options for what you might be looking for:

1. **Logo design:** A logo is a critical part of a company's branding and identity. A well-designed logo should be memorable, visually appealing, and communicate the essence of the company. You could consider incorporating elements of Bingo, such as the letters "in" and "go," into the design. Colors such as blue and green are often associated with parking, so you may want to consider using those in the logo.

2. **Tagline:** A tagline is a short phrase that accompanies a company's logo and helps to reinforce its brand message. For Bingo, you might consider using something like "Park in. Go on." This would play off the "in" and "go" parts of the name and emphasize the idea that Bingo makes parking easy and convenient for customers.

3. **Social media presence:** Social media is a powerful tool for marketing and advertising, so creating a strong social media presence is key. Consider setting up profiles on platforms like Facebook, Instagram, and Twitter, and regularly posting updates about Bingo's services, promotions, and events.

4. **Website:** A website is an essential component of any modern business, providing customers with information about the company, its services, and how to contact them. Make sure your website is visually appealing, easy to navigate, and optimized for search engines. It should also include a way for customers to easily book parking spaces online.

5. **Advertising campaigns:** To build brand awareness and attract customers, you may want to consider running advertising campaigns across various channels. This could include online advertising, such as Google AdWords or Facebook ads, as well as print advertising, such as billboards or flyers. Consider targeting your advertising efforts to specific demographics, such as people who live or work in the neighborhoods where your parking lots are located.

6. **Uniforms:** To create a professional and cohesive image for your staff, consider designing and providing uniforms for your parking attendants. This will help to reinforce your brand and make your attendants easily identifiable to customers. You could include the Bingo logo on the uniforms, as well as the tagline "Park in. Go on."

DocuSign Envelope ID: 25CB60E0-67BD-48BF-9944-37DA5DEF387D

Provide me with the franchise fees for this company

As an AI language model, I do not have access to the specific financial information or company policies of any businesses. The franchise fees for a parking lot operation franchise would be determined by the franchisor and would depend on various factors, such as the size and location of the franchise, the level of support and training provided by the franchisor, and the market demand for parking services in the area. Generally, franchise fees can range from tens of thousands to hundreds of thousands of dollars. It is best to consult with a franchise representative for specific fee information.

Provide me with an executive summery for this franchise

Executive Summary:

Bingo is a parking lot operation franchise that offers a turnkey solution for entrepreneurs who want to enter the parking management industry. Our franchise model includes a comprehensive operating system, centralized parking management software, and a training program that covers financial management, marketing and advertising, and operational efficiency.

Bingo's franchise fee includes access to our proprietary parking management software, which streamlines parking lot operations, manages inventory and supplies, and provides real-time data tracking for revenue and expenses. We also provide ongoing support to franchisees, including training and development programs for staff, marketing and advertising materials, and guidance on budgeting and financial management.

Our multi-unit franchise model allows franchisees to expand their business and increase revenue potential by managing multiple parking lot locations. The centralized management system allows for easy monitoring and control of multiple locations, reducing overhead costs and increasing efficiency.

At Bingo, we are committed to providing our franchisees with the tools and resources they need to succeed in the parking management industry. With our comprehensive operating system, centralized management software, and ongoing support, we believe that Bingo is the premier choice for entrepreneurs looking to enter this growing industry.

--

# Michael MacDonald

Director, Market Development Field Operations | P: | E: mac@arrive.com

This message and any attachments may contain confidential information, which is intended only for the person(s) named above. Any use, distribution, copying, or disclosure by any other person is strictly prohibited. If you are not the intended recipient, you should delete this message and kindly notify the sender via reply e-mail.

DocuSign Envelope ID: 25CB60E0-67BD-48BF-9844-37DA5DEF387D



Michael MacDonald <mac@arrive.com>

## Security alert

**Google** <no-reply@accounts.google.com>                                    Wed, Apr 19, 2023 at 12:20 PM
To: mac@arrive.com



# A new sign-in on Mac

 mac@arrive.com

We noticed a new sign-in to your Google Account on a Mac device. If this was you, you don't need to do anything. If not, we'll help you secure your account.

Check activity

You can also see security activity at
https://myaccount.google.com/notifications

You received this email to let you know about important changes to your Google Account and services.

© 2023 Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA



Michael MacDonald <mac@arrive.com>

## Security alert

**Google** <no-reply@accounts.google.com>                    Wed, Apr 19, 2023 at 12:33 PM
To: mac@arrive.com



### A new sign-in on Mac

 mac@arrive.com

We noticed a new sign-in to your Google Account on a Mac device. If this
was you, you don't need to do anything. If not, we'll help you secure your
account.

Check activity

You can also see security activity at
https://myaccount.google.com/notifications

You received this email to let you know about important changes to your Google Account and services.

© 2023 Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

# CITATION

**THE STATE OF TEXAS**

To:
**Michael Sellers MacDonald**
**1509 Brookside Dr.**
**Fairfield CT  06824**

**Defendant**, in the hereinafter styled and numbered cause:

**You have been sued**. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. **In addition to filing a written answer with the clerk you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.**
A copy of the petition accompanies this citation, in cause number C-1-CV-23-002440, styled **FlashParking, Inc., Plaintiff VS.  Michael MacDonald, Defendant**

Filed in **County Court at Law #2.** Civil and Family Courts Facility, 1700 Guadalupe, Austin, Texas on **June 09, 2023.**
Given under my hand and seal of Dyana Limon-Mercado, County Clerk **on this the 12th day of June, 2023**.

Dyana Limon-Mercado, County Clerk,
Travis County, Texas
1700 Guadalupe St.
Austin, Texas 78701
P.O. Box 149325
Austin, Texas 78714-9325

By Deputy:

_____
R Ontiveros

Attorney:
**LESSIE CAMPBELL GILSTRAP**
**221 W 6TH ST STE 960**
**AUSTIN TX  78701-3444**

------------------------------------------------------OFFICER'S RETURN -------------------------------------
Came to the hand on the _____ day of _____, 20___ at ____ o'clock ____M. Executed at _____ within County of _____ at _____ o'clock ____M on the _____ day of _____, 20___, by delivering to the within name _____ a true copy of this citation together with the accompanying copy of the petition having first attached such copy of such petition to such copy of citation and endorsed on such copy of citation the date of delivery.
To certify which witness my hand officially. _____ of _____ County, Texas
Sheriff/Constable/Authorized Person. By _____FEES PAID $_____

## TEMPORARY RESTRAINING ORDER
### C-1-CV-23-002440

**THE STATE OF TEXAS**

To: MICHAEL SELLERS MACDONALD
   1509 BROOKSIDE DR.
   FAIRFIELD CT 06824

WHEREAS, in Cause No. **C-1-CV-23-002440** pending on the docket of the **County Court at Law #2** of Travis County, Texas, wherein **FlashParking, Inc.** is Plaintiff and **Michael Sellers MacDonald** is Defendant, the Plaintiff has filed an Original Petition, asking among other things, for the granting and issuance of a Writ of Temporary Restraining Order, to restrain the Defendant **Michael Sellers MacDonald** as fully set out and prayed for in Plaintiff's Original Petition, a copy of which is attached hereto and to which reference is here made for the injunctive relief sought by the Plaintiff; upon presentation and consideration of said petition, the Honorable **ERIC M SHEPPERD** has entered in said cause the following, to-wit: See copy of order attached to Writ served.

AND WHEREAS, BOND if required has been filed and approved;
THESE ARE, THEREFORE, to restrain, and you the said Defendant are hereby restrained as fully set out and prayed for in Plaintiff's Original Petition, a copy of which is attached hereto, made a part hereof and to which reference is hereby made for full and complete statement of the injunctive relief sought by the Plaintiff.
AND YOU ARE FUTHER NOTIFIED that the hearing on Plaintiff's Application for A Temporary Restraining Order is set for **07/07/2023** at **9:00 A.M** Civil and Family Courts Facility, 1700 Guadalupe, Austin, Texas, at which time you are required to appear and show cause, if any, why said injunction should not be granted as prayed for
HEREIN FAIL NOT to obey this writ, under the pains and penalties prescribed by Law!
Issued and given under my hand and seal of office **on this the 12th day of June, 2023.**

         DYANA LIMON-MERCADO, County Clerk
         Travis County, Clerk
         1700 Guadalupe St
         Austin, TX  78701
         P.O. Box 149325
         Austin, Texas 78714-9325

         By: _____

            R Ontiveros

--------------------------------------------------- OFFICER'S RETURN --------------------------------------------------------

Came to hand on the ____ day of _____, 20__ at ____o'clock __M, and executed the ____ day of _____, 20__ at ____o'clock _M, by delivery to the within named _____at ____in _____County, Texas, in person, a true copy of this Notice the accompanying copy attached thereto. To certify which witness my hand officially.

CONSTABLE PRECINCT 5
TRAVIS COUNTY, TEXAS By Deputy _____

Filed: 6/12/2023 11:51 AM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Ruby Ontiveros

CAUSE NO. <u>C-1-CV-23-002440</u>

| | | |
|---|---|---|
| FLASHPARKING, INC., | § | THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. <u>2</u> |
| | § | |
| MICHAEL SELLERS MACDONALD, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

FlashParking, Inc., Plaintiff, in this cause ("FlashParking"), has filed a verified petition for a temporary injunction (the "Petition") and, in connection therewith, presented a request for a temporary restraining order, as set forth in its Petition.

It clearly appears from the facts set forth in FlashParking's Petition that unless Defendant MacDonald is immediately restrained, MacDonald will use the stolen and misappropriated highly confidential information obtained through his employment with FlashParking in violation of the Texas Uniform Trade Secrets before notice can be given and a hearing is had on FlashParking's motion for a temporary injunction. Unless MacDonald is immediately restrained as set forth below, FlashParking will suffer irreparable injury in the form of losing their competitive edge in the marketplace and goodwill for which there is no adequate remedy at law.

IT IS THEREFORE ORDERED that MacDonald, and all those acting in concert with him, is hereby prohibited and enjoined from engaging in the following activities, directly or indirectly:

a. disclosing to any person or using in any way any Confidential Information belonging to FlashParking. "Confidential Information" means any information that relates to FlashParking's actual or anticipated business or research and development, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the FlashParking's products or services and markets therefor, customer lists and customers, software, developments, inventions, processes, formulas, technology, designs, drawings,

1

engineering, hardware configuration information, marketing, finances or other business information including but not limited to the 4 million transactions that MacDonald downloaded from FlashParking and any other information belonging to FlashParking;

b.      tampering, altering, and/or erasing any computer data, files, folders, documents. Communications, or any other information that may be used as evidence in this case; and

c.      preventing or prohibiting the recovery of any Confidential Information belonging to FlashParking.

IT IS FURTHER ORDERED that Defendants appear at the hearing on Plaintiff's Application for Temporary Injunction which will be held at ___9___ o'clock _a_ .m. on VIA ZOOM    Meeting ID: 863 6512 2674    Passcode: 671171 __JULY 7TH,_____, 2023 ~~at the Travis County Courthouse in Austin, Texas~~ then and there to show cause, if any there be, why this temporary restraining order should not be made a temporary injunction pending a full trial on the merits. The clerk of the Court is hereby directed to issue a show cause notice to MacDonald to appear at the temporary injunction hearing.

IT IS FURTHER ORDERED that the clerk of the above-named Court shall forthwith, on the filing Plaintiff of the bond hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this order.

This order shall not be effective unless and until Plaintiff executes and files with the clerk a bond, in conformity with the law, in the amount of $ __100.00__.

This order expires fourteen days from the date hereof unless further extended by order this Court.

SIGNED on June_____12TH_____ , 2023, at __11__: __48__   __A__ .m.

_____

JUDGE PRESIDING

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 76511192
Filing Code Description: MSC:CV OTHER
Filing Description:
Status as of 6/12/2023 1:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 6/12/2023 11:51:37 AM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 6/12/2023 11:51:37 AM | SENT |



FILED FOR RECORD
2023 JUN 12 PM 1:27
TRAVIS COUNTY CLERK
TRAVIS COUNTY
TEXAS

June 12, 2023

**VIA EFILE**
Travis County County Clerk
1000 Guadalupe St., Suite #4.300
Austin, TX 78701

RE:     Cause No. C-1-CV-23-002440; *FlashParking, Inc. v. Michael MacDonald*

Dear Clerk of Court:

Please prepare a citation and a writ of injunction for the Temporary Restraining order to be issued to and served on Defendant Michael Sellers MacDonald. Please send the citation and writ to gazeredo@gilstraplawgroup.com.

Please let me know if you have any questions (512) 813-2061.

Sincerely,

GILSTRAP LAW GROUP PC

*Lessie C. Gilstrap*

Lessie C. Gilstrap

1801 E. 51ˢᵗ Street, Suite 365-295, Austin, Texas 78723
(512) 813-2061   www.gilstraplawgroup.com

Filed: 6/15/2023 1:27 PM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Andrea Scott

CAUSE NO.  C-1-CV-23-002440

| | | |
|---|---|---|
| FLASHPARKING, INC., | § | THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| MICHAEL SELLERS MACDONALD, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## FIRST AMENDED TEMPORARY RESTRAINING ORDER

FlashParking, Inc., Plaintiff, in this cause ("FlashParking"), has filed a verified petition for a temporary injunction (the "Petition") and, in connection therewith, presented a request for a temporary restraining order, as set forth in its Petition.

Based on the facts set forth in the Petition, the Court granted Plaintiff's request for temporary restraining order on June 12, 2023 (the "TRO") finding that that unless Defendant MacDonald is immediately restrained, MacDonald will use the stolen and misappropriated highly confidential information obtained through his employment with FlashParking in violation of the Texas Uniform Trade Secrets Act before notice can be given and a hearing is had on FlashParking's motion for a temporary injunction.  The Court also found that unless MacDonald is immediately restrained as set forth below, FlashParking will suffer irreparable injury in the form of losing their competitive edge in the marketplace and goodwill for which there is no adequate remedy at law.

The Court has determined and finds that because of a shortage of court reporters in Travis County, the hearing on Plaintiff's related application for temporary injunction cannot be held until July 7, 2023, and therefore there is good cause for the TRO to be extended until that date on the terms set forth below.

1

IT IS THEREFORE ORDERED that MacDonald, and all those acting in concert with him, is hereby prohibited and enjoined from engaging in the following activities, directly or indirectly:

a.     disclosing to any person or using in any way any Confidential Information belonging to FlashParking. "Confidential Information" means any information that relates to FlashParking's actual or anticipated business or research and development, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the FlashParking's products or services and markets therefor, customer lists and customers, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information including but not limited to the 4 million transactions that MacDonald downloaded from FlashParking and any other information belonging to FlashParking;

b.     tampering, altering, and/or erasing any computer data, files, folders, documents. Communications, or any other information that may be used as evidence in this case; and

c.     preventing or prohibiting the recovery of any Confidential Information belonging to FlashParking.

IT IS FURTHER ORDERED that Defendants appear at the hearing on Plaintiff's Application for Temporary Injunction which will be held at 9 o'clock a.m. on July 7, 2023 via Zoom, Meeting ID 863 6512 2674, Passcode: 671171, then and there to show cause, if any there be, why this temporary restraining order should not be made a temporary injunction pending a full trial on the merits.

IT IS FURTHER ORDERED that this order will expire at midnight on July 7, 2023 unless further extended by order of this Court.

IT IS FURTHER ORDERED that the clerk of the above-named Court shall forthwith issue a temporary restraining order in conformity with the law and the terms of this order.

IT IS FURTHER ORDERED that the previous bond filed by the Plaintiff in support of the

TRO shall support the extension of the TRO set forth herein, and no further bond is required.

SIGNED on June____15th____ , 2023, at ___10_ 23____ __a__.m.

_____

**JUDGE PRESIDING**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 76659894
Filing Code Description: No Fee Documents
Filing Description:
Status as of 6/16/2023 1:45 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 6/15/2023 1:27:03 PM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 6/15/2023 1:27:03 PM | SENT |

Filed: 6/20/2023 11:36 AM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Jazmonique Williams



June 20, 2023

<u>VIA EFILE</u>
Travis County County Clerk
1000 Guadalupe St., Suite #4.300
Austin, TX 78701

RE:    Cause No. C-1-CV-23-002440; *FlashParking, Inc. v. Michael MacDonald*

Dear Clerk of Court:

Please prepare a writ of temporary restraining order for the Amended Temporary Restraining Order signed on June 15, 2023 to be issued to and served on Defendant Michael Sellers MacDonald. Please send the writ to gazeredo@gilstraplawgroup.com.

Please let me know if you have any questions (512) 813-2061.

Sincerely,

GILSTRAP LAW GROUP PC

*Lessie C. Gilstrap*

Lessie C. Gilstrap

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Glorieni Azeredo on behalf of Glorieni Azeredo
Bar No. 24077840
gazeredo@gilstraplawgroup.com
Envelope ID: 76773063
Filing Code Description: Request
Filing Description: 2023.06.20 Request for Issuance of Writ
Status as of 6/20/2023 3:01 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 6/20/2023 11:36:45 AM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 6/20/2023 11:36:45 AM | SENT |

Filed: 6/30/2023 1:47 PM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Idalys Sotelo

CAUSE NO. C-1-CV-23-002400

|  |  |  |
|---|---|---|
| FLASHPARKING, LLC, | : | IN THE COUNTY COURT OF |
| Plaintiff, | : | |
| | : | |
| v. | : | TRAVIS COUNTY, TEXAS |
| | : | |
| MICHAEL SELLERS MACDONALD, | : | |
| | : | COUNTY COURT AT LAW 2 |
| Defendant. | : | |
| | : | |

## NOTICE OF APPEARANCE

Please enter the appearance of Attorney Kirsten M. Schneider on behalf of the Defendant

Michael Sellers MacDonald.

DATED: JUNE 30, 2023

Respectfully Submitted,

DEFENDANT
MICHAEL SELLERS MACDONALD

By:*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
Admitted Pro Hac Vic *pending*
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
kschneider@capclaw.com
His Attorney

1

## <u>CERTIFICATION OF SERVICE</u>

Pursuant to Efiling Local Rule 5.4, this is to certify that on June 30, 2023, a copy of the foregoing was filed electronically on the Texas County Court's efiling system, emailed to the parties below, and delivered to all those with access to such efiling system and mailed, postage prepaid, to those parties without electronic access. The electronic transmission was reported as complete.

*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
kschneider@capclaw.com

The foregoing document was emailed to:

FOR PLAINTIFF:
Lessie C. Gilstrap, Esq.
lessie@gilstraplawgroup.com
Glorieni M. Azeredo, Esq.
gazeredo@gilstraplawgroup.com

2

Filed: 6/30/2023 1:42 PM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Andrea Scott

CAUSE NO. C-1-CV-23-002400

|  |  |  |
|---|---|---|
| FLASHPARKING, LLC, | : | IN THE COUNTY COURT OF |
| Plaintiff, | : | |
| | : | |
| v. | : | TRAVIS COUNTY, TEXAS |
| | : | |
| MICHAEL SELLERS MACDONALD, | : | |
| | : | COUNTY COURT AT LAW 2 |
| Defendant. | : | |
| | : | JUNE 28, 2023 |

## MOTION FOR LEAVE TO APPEAR AND
## PARTICIPATE IN CASE PRO HAC VICE

Pursuant to Rule 19 of Governing Admission to the Bar of Texas and Texas Government Code Section 82.0361, attorney Kirsten M. Schneider ("non-resident attorney" or "attorney movant") files this Motion for Leave to Appear in the above-captioned pro hac vice in a particular case in Texas County Court at Law No. 2, Cause No. C-1-CV-23-002400. In support of this motion, attorney movant provides:

(1) Attorney movant, Kirsten M. Schneider, of Carey & Associates, P.C.'s office address is:

71 Old Post Road, Suite One
Southport, Connecticut 06890
(203) 255-4150 (Phone)
(203) 255-0380 (Fax)
kschneider@capclaw.com

(2) Attorney movant, Kirsten M. Schneider will be associated in the Texas proceeding with, Sean D. Johnson, of Reid Collins & Tsai LLP, Texas State Bar card number 24055746. Attorney Johnson's office address, telephone number, fax number, and email address are:

Reid Collins & Tsai LLP

1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
(512) 647.6100 (Main)
(512) 647.6109 (Direct)
(512) 647.6129 (Fax)
sjohnson@reidcollins.com

(3) Attorney movant has not appeared or sought leave to appear or participate in any case or cause, in Texas courts within the past two years.

(4) The non-resident attorney, and attorney movant is licensed in the following states: Washington, Utah and Connecticut. Attorney movant is also admitted to the following federal courts: United States District Court for the Southern District of New York, United States District Court for the Western District of Washington, United States District Court for the Eastern District of Washington, United States District Court for the District of Utah, United States District Court for the District of Connecticut. The non-resident attorney, and attorney movant is an active member in good standing in each of these State and Federal jurisdictions.

(5) The non-resident attorney has not been the subject of disciplinary action by the Bar or courts of any jurisdiction in which the attorney is licensed within the preceding five years.

(6) The non-resident attorney has not been denied admission to the courts of any State or to any federal court during the preceding five years.

(7) The non-resident attorney is familiar with the State Bar Act, the State Bar Rules, and the Texas Disciplinary Rules of Professional Conduct governing the conduct of members of the Bar and will at all times abide by and comply with the same so long as such Texas proceeding is pending and said Applicant has not withdrawn as counsel therein.

(8) In further support of this is Exhibit A, Acknowledgment Letter, and Exhibit B, Motion for Admission by attorney Sean J. Johnson.

2

WHEREFORE, the attorney movant requests leave to appear in this matter as counsel for

Defendant.

DEFENDANT,
MICHAEL MACDONALD

By:

Kirsten M. Schneider
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06490
(203) 255-4150 tel.
(203) 255-0380 fax.
kschneider@capclaw.com
His Attorney

NOTARY PUBLIC

SWORN TO BEFORE ME THIS THE

DAY OF JUNE 2023.

**SUSAN M. SEYFRIED**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES AUG. 31, 2023

3

# EXHIBIT A

# Board of Law Examiners

Appointed by the Supreme Court of Texas

June 27, 2023

kirsten schneider
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

     **Non-resident attorney: kirsten schneider**

     **Case: C-1-CV-23-002440**

     **Texas court or body: Texas County Court at Law #2**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Cordially,

Nahdiah Hoang
Executive Director

# EXHIBIT B



CAUSE NO. C-1-CV-23-002440

| | | |
|---|---|---|
| FLASHPARKING, INC., | § | IN THE COUNTY COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| MICHAEL MACDONALD, | § | |
| | § | |
| Defendant. | § | COUNTY COURT AT LAW 2 |

## SEAN D. JOHNSON'S MOTION IN SUPPORT OF
## KIRSTEN SCHNEIDER'S MOTION PRO HAC VICE

I, Sean D. Johnson, file this motion in support of Kirsten Schneider's motion pro hac vice to appear before the Court.

### BACKGROUND

1.      I am associated with Kirsten Schneider on this case. I am employed as an attorney on this case and will personally participate in the hearings and trial.

2.      I am a practicing attorney and a member in good standing with the State Bar of Texas. My State Bar number, office address, telephone number, fax number, and e-mail address are included below my signature.

3.      Kirsten Schneider is a reputable attorney in her state, and I recommend that the Court permit her to appear in this case.

### PRAYER

4.      For these reasons, I ask this Court to grant Kirsten Schneider's Motion Pro Hac Vice and allow her to appear before this Court in this case.

June 29, 2023

Respectfully submitted,

**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, TX 78746
T: 512-647-6100
F: 512-647-6109

/s/ Sean D. Johnson
Sean D. Johnson
Texas Bar No. 24055746
sjohnson@reidcollins.com

*Attorneys for Defendant*

## VERIFICATION

STATE OF TEXAS        §

TRAVIS COUNTY        §

Before me, the undersigned notary, on this day personally appeared Sean D. Johnson, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Sean D. Johnson. I am capable of making this verification. I have read my foregoing Motion in Support of Kirsten Schneider's Motion Pro Hac Vice. The facts stated in it are within my personal knowledge and are true and correct."

_____
Sean D. Johnson

Sworn to and subscribed before me by Sean D. Johnson on June 29, 2023.

_____
Notary Public in and for
the State of Texas

CYNTHIA L. GARCIA
Notary Public, State of Texas
Comm. Expires 10-16-2024
Notary ID 132732916

## CERTIFICATE OF SERVICE

I certify on June 29, 2023, a true and correct copy of the foregoing Motion in Support of Kirsten Schneider's Motion Pro Hac Vice was served on Plaintiff through their counsel of record via the court's electronic filing system.


*/s/ Sean D. Johnson*

## CERTIFICATION OF SERVICE

Pursuant to Local Rule 5.4, this is to certify that on June 30, 2023, a copy of the foregoing was filed electronically on the Texas County Court's efiling system, emailed to the parties below, and delivered to all those with access to such efiling system and mailed, postage prepaid, to those parties without electronic access. The electronic transmission was reported as complete.

*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
kschneider@capclaw.com

The foregoing document was emailed to:

FOR PLAINTIFF:
Lessie C. Gilstrap, Esq.
lessie@gilstraplawgroup.com
Glorieni M. Azeredo, Esq.
gazeredo@gilstraplawgroup.com

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 77140567
Filing Code Description: MOT:CV FOR LEAVE
Filing Description: motion for leave to appear and participate in case pro hac vice
Status as of 6/30/2023 4:05 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 6/30/2023 1:42:54 PM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 6/30/2023 1:42:54 PM | SENT |

Filed: 6/30/2023 4:05 PM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Andrea Scott

CAUSE NO. C-1-CV-23-002400

|  |  |  |
|---|---|---|
| FLASHPARKING, LLC, | : | IN THE COUNTY COURT OF |
| Plaintiff, | : | |
| | : | |
| v. | : | TRAVIS COUNTY, TEXAS |
| | : | |
| MICHAEL SELLERS MACDONALD, | : | |
| | : | COUNTY COURT AT LAW 2 |
| Defendant. | : | |
| | : | |

## MOTION FOR ENLARGEMENT OF TIME
## TO APPEAR AND SHOW CAUSE

Pursuant to Texas Rules of Civil Procedure, Rule 5, Defendant, Michael MacDonald, through its counsel Kirsten M. Schneider, Carey & Associates, P.C.[1], files this motion for enlargement of time to appear and show cause why an injunction should not be granted. The show cause hearing is scheduled to proceed on July 7, 2023 at 9:00AM. Defendant requests an extension of time until August 18, 2023 at 9:00AM, or a date there after, chosen at the Court's convenience. In support of Defendant's motion, he provides the following facts and good cause:

**BRIEF FACTS**

1) From 2019- June 8, 2023, Plaintiff was an employee of Defendant.

2) On May 24, 2023, Defendant was given notice that his "position was being eliminated" and that his last day of employment would be June 16, 2023. He was offered a severance package and he left this employment on good terms.

---

[1] Attorney Kirsten M. Schneider's Motion for Leave to Appear pro hac vice was filed previously on June 30, 2023 and is pending.

3) On June 8, 2023, Plaintiff terminated Defendant's employment, via email, with the explanation that the Company had received information that caused it to change its separation plans with him.

## PROCEDURAL FACTS AND GOOD CAUSE

4) On June 9, 2023, Plaintiff filed this pending lawsuit against Defendant.

5) On June 14, 2023, Defendant was served papers at residence in Fairfield, Connecticut.

6) On June 16, 2023, Defendant retained legal counsel. Defendant obtained legal counsel in Connecticut because he resides in Connecticut, he is located in Connecticut, and has only worked remotely from home for the entire time he worked for Plaintiff.

7) On June 21, 2023, Defendant' counsel began the process of obtaining local counsel in or near Travis County, Texas and taking steps to me admitted in this matter pro hac vice.

8) On June 29, 2023, Defendant's counsel engaged local Texas counsel to sponsor her non-resident attorney motion for leave to appear and participate in this matter.

9) On June 30, 2023, Defendant's counsel filed its Notice of Appearance and a Motion for Leave to Appear and Participate pro hac vice.

10) On June 22, 2023, Defendant's counsel contacted Plaintiff's counsel, Lessie Gilstrap. Attorney Gilstrap suggested the participate in settlement discussions.

11) On June 27, 2023, Plaintiff's proposed a settlement offer to Defendant's counsel.  As of the filing of this motion, Plaintiff has not responded to the offer of settlement.

12) On June 28, 2023, Defendant's counsel emailed Plaintiff's counsel and requested Plaintiff's consent to this motion for enlargement of time until August 18, 2023.  Plaintiff did not consent to this motion. Plaintiff would only consent if Defendant consented to an extension of the temporary restraining order. Defendant refused to be restrained further

because he did not do the acts alleged against him; there is no evidence of harm done to Plaintiff; and no evidence of potential harm that Plaintiff may suffer.

13) However, on June 29, 2023, Plaintiff's counsel, on behalf of both parties, contacted the Court's clerk against requesting that the show cause hearing be moved to August 18, 2023 and that the temporary restraining order also be extended. Later the same day, on June 29, 2023, Plaintiff's counsel then instructed the Court's clerk to leave the July 7 setting in the event the parties are unable to reach an agreement on the order. The parties did not reach an agreement on the order.

14) Defendant needs an extension of time to appear at the show cause hearing because Defendant's counsel is out of town and unavailable from June 29-July 3 and July 6-15, 2023. The conflicting travel was pre-planned over a year ago and Defendant's counsel will be without internet or with only limited internet for the duration of her trip.

15) Plaintiff's counsel was put on notice of Defendant's counsel's scheduling conflict with the show cause hearing on June 22, 2023.

16) Defendant's counsel needs an extension of time to discover information related to this matter to adequately prepare Defendant's defense. The Plaintiff has made extensive and serious allegations towards Defendant in this lawsuit. Defendant, prior to being sued was never informed that Plaintiff believed he had used or retained the company's property, nor was he ever informed that there was a conflict at all. Defendant was blindsided by the legal action being filed against him less than 24 hours after he was terminated. He had never been told of a conflict or warned of a potential conflict. He was never asked to return company property or even if he had, in fact, retained company property. In fact, when he

was given notice of his termination, he left on good terms and with a severance package. Defendant's counsel needs more time to adequately prepare his defense.

17) Defendant requests an extension of time to appear at the show cause hearing because settlement discussions are ongoing and there is a good likelihood that this matter may be settled without further litigation. Allowing additional time for these parties to discuss settlement is in the interest of swift justice and promotes judicial efficiency.

18) Defendant requests an extension of time because he believes that this Court lacks personal jurisdiction over Defendant. If this matter does not settle, Defendant will be filing a Motion to Dismiss for lack of personal jurisdiction or in the alternative a motion to transfer venue to Connecticut. Defendant does not have the requisite minimum contacts with this jurisdiction and has not purposefully availed himself of the privilege of conducting activities in Travis County, Texas, or Texas State; defendant could have reasonably anticipated being haled into a Texas Court.

WHEREFORE, Plaintiff respectfully requests that the court grant the instant motion.

DATED: June 30, 2023

Respectfully Submitted,

DEFENDANT
MICHAEL SELLERS MACDONALD

By:*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
Admitted Pro Hac Vice *pending*
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
kschneider@capclaw.com
His Attorney

4

## CERTIFICATION OF SERVICE

Pursuant to Efiling Local Rule 5.4, this is to certify that on June 30, 2023, a copy of the foregoing was filed electronically on the Texas County Court's efiling system, emailed to the parties below, and delivered to all those with access to such efiling system and mailed, postage prepaid, to those parties without electronic access. The electronic transmission was reported as complete.

*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
kschneider@capclaw.com

The foregoing document was emailed to:

FOR PLAINTIFF:
Lessie C. Gilstrap, Esq.
lessie@gilstraplawgroup.com
Glorieni M. Azeredo, Esq.
gazeredo@gilstraplawgroup.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 77152237
Filing Code Description: MOT:CV OTHER
Filing Description: Motion for Enlargement of Time to Appear and Show Cause
Status as of 6/30/2023 4:30 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 6/30/2023 4:05:03 PM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 6/30/2023 4:05:03 PM | SENT |

Filed: 7/5/2023 10:45 AM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Brycen Winters

CAUSE NO. C-1-CV-23-002440

| | | |
|---|---|---|
| | : | |
| FLASHPARKING, LLC, | : | IN THE COUNTY COURT OF |
| Plaintiff, | : | |
| | : | |
| v. | : | TRAVIS COUNTY, TEXAS |
| | : | |
| MICHAEL SELLERS MACDONALD, | : | |
| | : | COUNTY COURT AT LAW 2 |
| Defendant. | : | |
| | : | |

## AMENDED NOTICE OF APPEARANCE
### FOR KIRSTEN M. SCHNEIDER

Attorney Kirsten M. Schneider submits this Amended Notice of Appearance. On June 30, 2023, attorney Kirsten M. Schneider filed her Notice of Appearance in error, submitting an incorrect draft. Attorney Schneider has not been admitted to this Texas Court and her Pro Hac Vice motion is still pending. Hence, her appearance as counsel is premature and therefore insufficient as filed on June 30, 2023. After, or if, the motion for pro hac vice admissions is granted, attorney Kirsten M. Schneider requests that her appearance be entered on behalf of defendant, Michael MacDonald, as a Special Appearance pursuant to Tex.R.Civ.P 120a. and 120a.2., challenging the personal jurisdiction of this Court over the defendant. Attorney Schneider's sworn motion of Special Appearance will be filed promptly after her Motion for Pro Hac Vice is decided.

DATED: JULY 4, 2023

1

Respectfully Submitted,

DEFENDANT
MICHAEL SELLERS MACDONALD

By: */s/ Kirsten M. Schneider*

Kirsten M. Schneider
Admitted Pro Hac Vice *pending*
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
kschneider@capclaw.com
His Attorney

## **CERTIFICATION OF SERVICE**

Pursuant to efiling Local Rule 5.4, this is to certify that on July 5, 2023, a copy of the foregoing was filed electronically on the Texas County Court's efiling system, emailed to the parties below, and delivered to all those with access to such efiling system and mailed, postage prepaid, to those parties without electronic access. The electronic transmission was reported as complete.

*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
kschneider@capclaw.com

The foregoing document was emailed to:

FOR PLAINTIFF:
Lessie C. Gilstrap, Esq.
lessie@gilstraplawgroup.com
Glorieni M. Azeredo, Esq.
gazeredo@gilstraplawgroup.com

Filed: 7/5/2023 10:45 AM
Dyana Limon-Mercado
Travis County Clerk
C-1-CV-23-002440
Brycen Winters

CAUSE NO. C-1-CV-23-002440

|  |  |  |
|---|---|---|
| FLASHPARKING, LLC, | : | IN THE COUNTY COURT OF |
| Plaintiff, | : | |
| | : | |
| v. | : | TRAVIS COUNTY, TEXAS |
| | : | |
| MICHAEL SELLERS MACDONALD, | : | |
| | : | COUNTY COURT AT LAW 2 |
| Defendant. | : | |
| | : | |

## AMENDED NOTICE OF APPEARANCE
## FOR KIRSTEN M. SCHNEIDER

Attorney Kirsten M. Schneider submits this Amended Notice of Appearance. On June 30, 2023, attorney Kirsten M. Schneider filed her Notice of Appearance in error, submitting an incorrect draft. Attorney Schneider has not been admitted to this Texas Court and her Pro Hac Vice motion is still pending. Hence, her appearance as counsel is premature and therefore insufficient as filed on June 30, 2023. After, or if, the motion for pro hac vice admissions is granted, attorney Kirsten M. Schneider requests that her appearance be entered on behalf of defendant, Michael MacDonald, as a Special Appearance pursuant to Tex.R.Civ.P 120a. and 120a.2., challenging the personal jurisdiction of this Court over the defendant. Attorney Schneider's sworn motion of Special Appearance will be filed promptly after her Motion for Pro Hac Vice is decided.

DATED: JULY 4, 2023

Respectfully Submitted,

DEFENDANT
MICHAEL SELLERS MACDONALD

By*: /s/ Kirsten M. Schneider*

Kirsten M. Schneider
**Admitted Pro Hac Vice** *pending*
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
kschneider@capclaw.com
His Attorney

## **CERTIFICATION OF SERVICE**

Pursuant to efiling Local Rule 5.4, this is to certify that on July 5, 2023, a copy of the foregoing was filed electronically on the Texas County Court's efiling system, emailed to the parties below, and delivered to all those with access to such efiling system and mailed, postage prepaid, to those parties without electronic access. The electronic transmission was reported as complete.

*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
kschneider@capclaw.com

The foregoing document was emailed to:

FOR PLAINTIFF:
Lessie C. Gilstrap, Esq.
lessie@gilstraplawgroup.com
Glorieni M. Azeredo, Esq.
gazeredo@gilstraplawgroup.com

3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 77205917
Filing Code Description: Amended Filing
Filing Description: Amended Notice of Appeqarance
Status as of 7/5/2023 12:26 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 7/5/2023 10:45:13 AM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 7/5/2023 10:45:13 AM | SENT |

CAUSE NO.  C-1-CV-23-002440

| | | |
|---|---|---|
| FLASHPARKING, INC., | § | THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| MICHAEL SELLERS MACDONALD, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## TEMPORARY INJUNCTION

On July 7, 2023 came to be heard the Application for a Temporary Injunction filed by Plaintiff FlashParking, Inc. ("FlashParking") against Defendant Michael Sellers MacDonald ("Defendant" or "MacDonald").  Plaintiff appeared in person and through counsel.  Defendant was duly notified of the hearing but did not appear.  In advance of the hearing, counsel for Defendant advised that neither she nor anyone from the firm serving as her local counsel would appear at the hearing because of conflicts.  The Court proceeded with the hearing after counsel for Defendant advised the Court that she would not agree to extend the Temporary Restraining Order previously entered in this case to a date on which she was available for the hearing.

After considering the pleadings, arguments, and admissible evidence, the Court has determined that a Temporary Injunction should be entered.

The Court FINDS that (i) FlashParking has shown a probable right to recover on its cause of action against MacDonald for misappropriating trade secrets from FlashParking, (ii) MacDonald has expressed intention to use the trade secrets that he misappropriated from FlashParking for his own personal gain, (iii) MacDonald, unless enjoined, will use or disclose to

1

a third party the trade secrets he misappropriated from FlashParking in violation of the Texas Uniform Trade Secrets Act, (iv) the trade secrets MacDonaly misappropriated from FlashParking provide FlashParking with a competitive edge and goodwill within the marketplace, and (v) unless Defendant MacDonald is immediately restrained as set forth below, FlashParking will suffer irreparable injury in the form of lost corporate opportunities and goodwill for which there is no adequate remedy at law.

The Court further specifically FINDS that MacDonald, in his role as FlashParking's Director of Product Operations, had access to FlashParking's highly sensitive confidential information and trade secrets regarding FlashParking's business operations, including statistics and data reflecting parking durations, rates, capacities and hours of operation for millions of parking transactions at thousands of locations across Texas and the United States.  Using this access afforded by his position at FlashParking, MacDonald downloaded and accessed via a personal device FlashParking's confidential information and trade secrets with the intent of using them for his own personal gain.  Given these circumstances, if MacDonald is not enjoined from using or disclosing to third parties the confidential information and trade secrets he misappropriated from FlashParking, FlashParking will suffer irreparable injury in the form of lost trade secrets, lost competitive edge in the marketplace, and lost goodwill for which there is no adequate remedy at law.

IT IS THEREFORE ORDERED that MacDonald, and all those acting in concert with him, is hereby prohibited and enjoined from engaging in the following activities, directly or indirectly:

a.   disclosing to any person or using in any way any Confidential Information belonging to FlashParking. "Confidential Information" means any information that relates to FlashParking's actual or anticipated business or research and development, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the FlashParking's products or services and markets therefor, customer lists and customer information, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, business operations, including but not limited to statistics and data reflecting parking durations, rates, capacities and hours of operation, and other business information including but not limited to the information reflected in any of the transactions that MacDonald downloaded from FlashParking;

b.   tampering with, altering, and/or erasing any computer data, files, folders, documents, communications, metadata, or any other documents and information that may be used as evidence in this case; and

c.   preventing or hindering in any way the immediate return to FlashParking of any Confidential Information belonging to FlashParking.

IT IS FURTHER ORDERED that this case is set for trial on the merits on

_____, 2024 at the Travis County Courthouse in Austin, Texas.

IT IS FURTHER ORDERED that the previous bond filed by the Plaintiff in support of the Temporary Restraining Order shall serve as bond for this injunction and no further bond is required. The clerk of this Court shall forthwith issue a temporary injunction in conformity with the law and the terms of this Order.

SIGNED on July ___, 2023, at ___:_____ ___.m.

_____
ERIC SHEPPERD, JUDGE PRESIDING

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Glorieni Azeredo on behalf of Glorieni Azeredo
Bar No. 24077840
gazeredo@gilstraplawgroup.com
Envelope ID: 77277803
Filing Code Description: ORD:CV PROPOSED ORDER/JUDGMENT CT 2
Filing Description: TEMPORARY INJUNCTION
Status as of 7/7/2023 11:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lessie Gilstrap | | lessie@gilstraplawgroup.com | 7/6/2023 5:26:03 PM | SENT |
| Glorieni Azeredo | | gazeredo@gilstraplawgroup.com | 7/6/2023 5:26:03 PM | SENT |

Associated Case Party: MichaelSellersMacDonald

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kirsten Schneider | | kschneider@capclaw.com | 7/6/2023 5:26:03 PM | ERROR |