UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS,
AUSTIN DIVISION

_____
                                          :

FLASHPARKING, INC.,                 :          CIV. NO:  1:23-cv-00772-DII
              Plaintiff,                  :

v.                                        :

MICHAEL SELLERS MACDONALD,     :

        Defendants.                  :          AUGUST 10, 2023
                                          :
_____


**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT FOR IMPROPER VENUE, FORUM NON
CONVENIENS,  AND, IN THE ALTERNATIVE, MOTION TO DISMISS FOR
FAILUTRE TO STATE A CLAIM AND MOTION TO TRANSFER VENUE</u>**

TABLE OF CONTENTS

Page

I.    FACTS AND PROCEDURE …………………………………………………1

II.   LEGAL STANDARD AND ARGUMENT …………………………………..5

      A      Motion to Dismiss under  12(b)(3), Improper Venue ………………………5

      B.     Motion to Dismiss -  Forum Non Conveniens …………………………….. 7

      C.     Motion to Dismiss under 12(b)(6), for Failure to State a Claim:
             Texas Uniform Trade Secrets Act …………………………………………… 9

      D.     Motion to Dismiss under 12(b)(6), for Failure to State a Claim:
             Attorney's Fees ……………………………………………………………… 13

      E.     Motion to Dismiss under 12(b)(6), for Failure to State a Claim:
             Injunctive Relief ……………………………………………………………14

      F.     Motion to Transfer Venue …………………………………………………..17

III.  CONCLUSION …………………………………………………………………19

## TABLE OF AUTHORITIES

<u>Legal Authority</u>                                                                                                    <u>Page(s)</u>

*Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 46 Fed.R.Serv.3d 12 (5th Cir.2000)      8

*Ass'n of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 2d 693
(N.D. Tex.2010)(Kinkeade, J.)                                                                                      14

*Balawaider v. Scott*, 160 F.3d 1066 (5th Cir.1998)                                                   17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)                                                       9

*Blue Yonder Group, Inc. v. Kinaxis, Inc.*, 2021 WL 3674104
(N.D. Texas, Dallas Div., July 21, 2021)                                                                   11

*BMC Software, Inc. v. International Business Machines Corp.,* 2022 WL 1733106
(S.D. Texas, Houston Div., May 30, 2022)                                                                9

*CAE Integrated, LLC v. Moov Technologies, Inc.,* 2022 WL 4476784,
(W.D.Tex., Austin Div., Sept. 26, 2022)                                                                 9

*Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916 (5th Cir.1987)                       17

*Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285 (5th Cir.2004)               9

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir.2007)                                                     9

*De Aguilar v. Boeing Co.,* 11 F.3d 55 (5th Cir.1993)                                               8

*Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333 (5th Cir.2008)                            9

*Ferrer v. Chevron Corp*., 484 F.3d 776 (5th Cir.2007)                                          10

*GE Betz. Inc. v. Moffitt-Johnston*, 885 F.3d 318 (5th Cir.2018)                           11

*Ginter ex rel. Ballard v. Belcher, Pendergast & Laporte,* 536 F.3d 439
(5th Cir. 2008)                                                                                                          5

*Globe Ranger Corp. v. Software AG United States of America, Inc.*, 836 F.3d 477
(5th Cir. 2016).                                                                                                        11

*Graham v. Dyncorp Int'l Inc.,* 973 F. Supp. 2d 698 (S.D. Tex. 2013)                     5

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)       8, 18

*Harris Cnty. v. CarMax Auto Superstores, Inc*., 177 F.3d 306 (5th Cir.1999)     14

*Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.2d 53,
1964 A.M.C. 315 (5th Cir.1963)                                              18

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191 (5th Cir.2007)          9

*In re Volkswagon of America, Inc.*, 545 F.3d 304, 89 U.S.P.Q.2d 1501 (5th Cir.2008)   18, 19

*Morris-Shea Bridge Co. v. Cajun Indus., LLC,* 2021 WL 4084516
(S.D. Tex., Galveston Div. Feb. 22, 2021)                                   10

*Nichols v. Alcatel USA, Inc.* 532 F.3d 364 (5th Cir.2008)                  14

*Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955)    9, 18

*Nuttall v. Juarez*, 984 F. Supp. 2d 637 (N.D. Tex. 2013)                   5

*Plotkin v. IP Axess, Inc.*, 407 F.3d 690 (5th Cir.2005).                   9

*Silverthorne Seismic, LLC v Sterling Seismis Servs., Ltd.,* 2021 WL 4710813
(S.D. Tex., H. Div., Oct. 7, 2021)                                          10

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir.2003)       8

 *Vest Safety Medical Services, LLC v. Arbor Environmental, LLC*, 2020 WL 4003642,
(S.D. Texas, H. Div., July 15, 2020)                                        11

*UOP LLC v. Extern Energy Solutions, L.P.,*  2021 WL 4096560
(W.D. Texas, Midland-Odessa Div., August 26, 2021)                          5

*Zurch Am. Ins. Co.,* 982 F. Supp. 2d 714 (W.D. Tex. 2013)                  5

Fed. R. Civ. P. 12(b)(3)                                                    1
Fed. R. Civ. P.  12(b)(6)                                                   1
U.S.D.C., W.D. Texas, Austin Div., Local Rule CV-7                          1
28 USC §1406(a)                                                             1
28 U.S.C. §1391(b)                                                          6
Tex.Civ.Prac & Rem. Code § 15.002.                                         6,7
Tex. Civ. Prac. & Rem. Code §134A.004                                      11
Tex. Civ. Prac. & Rem. Code  § 134A.005                                    13
Texas Uniform Trade Secrets Act , Sec. 134A.001(6)                         11

On June 8, 2023, in the late afternoon,  Flashparking terminated MacDonald's employment, via email, stating that the Company had "received information that caused it to change its separation plans with him." Exh.A ¶43.

On June 9, 2023, in the morning, Flashparking filed its application for temporary injunction and alleged claims for violation of TUTSA, attorney's fees, and injunctive relief in Texas County Court, No.2, Travis County, Texas, Case No. C-1-CV-23-002440.                              .

On June 12, 2023, the Court ordered that MacDonald be enjoined from using Flashparking's alleged confidential and proprietary information.

On July 5, 2023 MacDonald filed a Motion for Special Appearance objection to personal jurisdiction in Texas County Court.

On  July 6, 2023 without a show cause hearing, the Court extended its order that MacDonald be enjoined from using Flashparking's alleged confidential and proprietary information.

On July 7, 2023, this present Removal Action was filed.

On July 7, 2023, the Texas County Court denied Defendant's Motion for Special Appearance challenging its personal jurisdiction over Defendant <u>after</u> the Removal Action was filed, and <u>after</u> it ruled on the extended temporary restraining order.

**<u>MacDonald's working relationship with Flashparking</u>**

MacDonald worked for Flashparking and helped it develop and implement its mobile automated parking technology. MacDonald was the Director of Product Operations. He began his employment with Flashparking in September 2019, when it was Arrive Mobility. Exh.A. ¶¶11, 13. Arrive Mobility is headquartered in Chicago, Illinois and MacDonald was its Director of Market Development Field Operations. *Id*. at 13. This is a digital solution (mobile app/website). *Id*. In January 2021, Arrive Mobility merged with a company called Flashparking out of Austin, Texas.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS,
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| FLASHPARKING, INC., | : | CIV. NO: 1:23-cv-00772-DII |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL SELLERS MACDONALD, | : | |
| Defendants. | : | AUGUST 10, 2023 |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR IMPROPER VENUE, FORUM NON CONVENIENS, AND, IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILUTRE TO STATE A CLAIM AND MOTION TO TRANSFER VENUE

Pursuant to Federal Rules of Civil Procedure 12(b)(3), and Local Rule CV-7, Defendant Michael MacDonald (hereinafter referred to as "Defendant" or "MacDonald") respectfully moves to dismiss Plaintiff's Amended Complaint dated June 15, 2023 for improper venue, or for *forum non conveniens* and, in the alternative, to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and to transfer venue pursuant to 28 USC §1406(a).

### I. FACTS AND PROCEDURE

#### Procedure

On May 24, 2023, MacDonald was told that his "position was being eliminated" and that his last day of work was June 16, 2023. Exhibit A (EEOC Charge Affidavit of Michael MacDonald) ¶40. He was offered a severance package and left on good terms. *Id.*

*Id*. at 9. The company then acquired 10 additional companies in fairly quick succession. *Id*. at 14. This put a digital solution together with a company that built payment machines for parking lots, cameras for license plate reading and was on its way to becoming the operating system of the smart city. *Id*. MacDonald was responsible for advancing Flashparking's market. *Id*. at 19. That is, coming up with new innovative ways to expand Flashparking's business model throughout various avenues of transportation. *Id*. at 38. MacDonald's job duties included a role to develop and deliver customized solutions to the market, become more efficient with the deployment and analysis of Flashparking solutions, as well as grow and evolve Flashparking into an operating system for the smart city. *Id*. at 24. As the Director of Product Operations for Flashparking he was actively trying to develop new business strategies for Flashparking and analyzing the performance of previous projects/products, at the instruction of his manager, the Senior Vice President of Product Development Matt Perille, by using data for analysis including capacity, revenue and other location/performance specific information. One larger initiative that Flashparking wanted MacDonald to test and develop was a merchandising kit. *Id*. at 32. Essentially, it is a franchise tool kit of wayfinding/informational signs and digital payment opportunities that is sent to parking lots without needing to install them that would allow Flashparking to completely saturate the market with the company's brand and technology. *Id*. at 24, 29, 32, 130. It would be a step closer to the smart city that MacDonald understood the company was interested in pursuing. *Id*. In an attempt to increase Flashparking's revenue and knowing that the company's relationship with its supply partners could be fragile, on April 19, 2023, MacDonald performed an AI search to brainstorm a collection of loose thoughts that he could be refined into a new crown jewel of a business opportunity for Flashparking. *Id*. at 32-38, . He did this by using ChatGPT, an AI application. *Id.* The search was performed using his work laptop from his home office in Connecticut. *Id.* at 35.

This search was performed with the intent to benefit and grow Flashparking's business and in the course and scope of his employment. *Id*. He was trying to find new business avenues for Flashparking to explore. *Id*. Unfortunately, the search did not lead to any new business strategies or avenues to evolve Flashparking's business. *Id*. at 36. In accordance, on May 8, 2023, MacDonald forwarded the search to his work email with the note that the search was "Not relevant." *Id*. at 36; see Exh. B. MacDonald did not take Flashparking's confidential or proprietary information. Rather he used the parking transaction information in the course and scop of his job, and to benefit Flashparking.

**MacDonald resides in Connecticut and had no contacts with the state of Texas**

For the entire tenure of his employment with Flashparking, MacDonald has resided in Connecticut and has worked remotely from his home office in Connecticut. Exh A. ¶ ¶ 3, 5, 7, 8, 10. All factual allegations by Flashparking against MacDonald occurred in the state of Connecticut. (Compl. ¶10-12). In fact, as the Director of Operations (from which all these claims stem) **MacDonald has never been to the state of Texas**. Exh A. ¶¶8, 10. He has only been present in Austin, Texas three times in his entire life, from August 9-12, 2021, February 14-16, 2022, and August 3-4, 2022,  but not in his capacity as Director of Product Operations for Flashparking. *Id*. at ¶8. He never worked in Texas, and he has never physically been in the state of Texas in his capacity as Director of Product Operations for Flashparking. *Id*.

Additional information related to the allegations in the Complaint and its Exhibits are attached hereto as Exhibit A, the Affidavit of Michael MacDonald and Exhibit B, MacDonald ChatGPT AI search email.

## II.        LEGAL STANDARD AND ARGUMENT

Defendant submits this motion to dismiss for improper venue and for dismissal pursuant to the doctrine of *forum non conveniens*. If this Court finds venue proper, Defendant moves to dismiss for failure to state a claim and to transfer venue to the United States District Court, District of Connecticut. Plaintiff alleges three causes of action, and Defendant moves to dismiss all three: 1) violation of TUTSA, 2) Attorney's fees pursuant to Texas Code 134A.005, and 3) Injunctive Relief. (Compl. ¶¶14, 15, 16). Additionally, Defendant requests that he be awarded attorney's fees associated with this motion.

### A.        Motion to Dismiss under  12(b)(3), Improper Venue

In this case, venue in <u>any</u> Texas Court is improper. Jurisdiction and venue were improper in The County Court, No.2, Travis County, Texas, which is why Defendant removed the action to Texas federal court. First, there is complete diversity of citizenship; second, the amount in controversy is well above $75,000 based on the true value Plaintiff's claims against Defendant, and Defendant's counterclaims; and third, Defendant had no contacts with the State of Texas. (Compl. ¶¶2, 3), Exh. A ¶¶3, 5, 7, 8, 10.

Texas State or Federal Court is the improper venue for this legal matter. When an objection to venue is raised, the plaintiff bears the burden of demonstrating that venue is proper in the selected forum. *UOP LLC v. Extern Energy Solutions, L.P.,*  2021 WL 4096560, W.D. Texas, Midland-Odessa Div., Case No. MO:20-cv-233-DC, August 26, 2021, citing *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013); *Zurch Am. Ins. Co.,* 982 F. Supp. 2d at 719; *Graham v. Dyncorp Int'l Inc.,* 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013).While, the court must accept as true all the allegations in the plaintiff's complaint and resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor, the court may also consider other evidence in the record "beyond

the facts alleged in the complaint and its proper attachments." *Nuttall,* 984 F.Supp at 642-643, *see Zurich Am. Ins. Co.,* 982 F. Supp. 2d at 719, *Graham*, 973 F. Supp. 2d at 701, and citing *Ginter ex rel. Ballard v. Belcher, Pendergast & Laporte,* 536 F.3d 439, 449 (5th Cir. 2008).

Moreover, under 28 U.S.C. §1391(b), proper venue requires:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

However, because Plaintiff's first brought this action in Texas County Court, Plaintiff alleged that venue was proper under Tex.Civ.Prac & Rem. Code § 15.002. (Compl 6). Sec. 15.002 provides in relevant part:  VENUE:  GENERAL RULE.

> (a)  Except as otherwise provided by this subchapter or Subchapter B or C, all lawsuits shall be brought:
> (1)  in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
> (2)  in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
> (3)  in the county of the defendant's principal office in this state, if the defendant is not a natural person;  or
> (4)  if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

Here, in a point by point analysis of § 15.002(a), venue in any Texas court is improper:

Section 15.002 (a)(1) – the answer is Connecticut. While Plaintiff alleges that venue in Travis County is proper because "all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Travis County." (Compl. ¶6). This statement is simply false. Plaintiff's own pleadings allege that, "Flashparking discovered that on April 21, 2023, MacDonald sent an email from his Flashparking email to his personal email account containing records of his exchanges with ChatGPT." (Compl ¶10); and MacDonald downloaded parking transactions

information MacDonald works exclusively from his home office in Connecticut, and on April 21, 2023, he was working in Connecticut. Plaintiff also allege that, "MacDonald signed into his Flashparking account "from a new Mac Device," and that he "connected a personal device to the Google drive containing Flashparking. (Compl. ¶12). The part Flashparking left out was that this alleged action took place in the course and scope of his employment, in Connecticut. Exh. A ¶¶6, 17-20, 31-35. Hence, "all or a substantial part of the events or omissions giving rise to the claim occurred" in Connecticut.

Section 15.002 (a)(2) – the answer is Connecticut. Defendant resides in Connecticut. (Compl. ¶3). He resided in Connecticut and worked from his home office in Connecticut for his entire tenure as an employee with Plaintiff. Exh A.¶¶ 3, 5, 8, 9, 10.

Section 15.002 (a)(3) – the answer is Connecticut.  Defendant's principal place of business is his home office in Connecticut. Exh. A ¶6.

Section 15.002 (a)(4) – Plaintiff cannot just elect to lay venue in "the county in which the plaintiff resided at the time of the accrual of the cause of action." That is not how this Code reads. A plain reading of the Code provides that "if Subdivisions (1), (2), and (3) do not apply"…. then plaintiff can choose venue "the county in which the plaintiff resided at the time of the accrual of the cause of action."  That choice of venue is not an option for Plaintiff if 1, 2, or 3 apply.  Here, 1, 2, and 3 all apply, and Plaintiff had to choose one of those options.  All of which are Connecticut. This case must be dismissed for improper venue.

### B.       Motion to Dismiss - *Forum Non Conveniens*

Plaintiff's has misused its general venue choice to purposefully inconvenience and antagonize Defendant. There is no explanation how Plaintiff could read Sec. 15.002(a) and come to any other conclusion than Connecticut is the proper venue. Venue in Texas is outrageously

inconvenient for Defendant to participate, and Plaintiff knows this. It is not a stretch to reason that the Plaintiff chose Texas as a venue for its convenience, knowing that it would be so bothersome for Defendant that he may chose not to defend his civil liberties. There is no logical reason why Plaintiff would choose venue in a Texas Court when it knew that all alleged acts related to this matter happened in Connecticut, that Defendant resides in, and has always worked in, Connecticut, and that Plaintiff is registered to do business in Connecticut. Venue in Texas is improper and a deliberate abuse of Plaintiff's choice of general venue.

Federal courts apply the federal version of *forum non conveniens* in resolving a motion to dismiss where the alternative forum is a foreign tribunal. *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993). To obtain a *forum non conveniens* dismissal, a party must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal. *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221-22 (5th Cir.2000), *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir.2003). Here, under the federal *forum non conveniens* principles, Connecticut is clearly the proper and more convenient forum.

Further, in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947), the Supreme Court firmly established in the federal courts the common-law doctrine of *forum non conveniens*. The *Gilbert* court reasoned that,

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Id.* at 507. The essence of the *forum non conveniens* doctrine is that a court may decline jurisdiction <u>and may actually dismiss a case, even when the case is properly before the court,</u> if the case more <u>conveniently could be tried in another forum</u>. *Id.*

8

Shortly after the *Gilbert* decision, in 1948, the venue transfer statute became effective. The essential difference between the *forum non conveniens* doctrine and § 1404(a) is that under § 1404(a) a court does not have authority to dismiss the case; the remedy under the statute is simply a transfer of the case within the federal system to another federal venue more convenient to the parties, the witnesses, and the trial of the case. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544 (1955).

Here, this matter must be dismissed pursuant to the common law doctrine of *forum non conveniens*. Plaintiff's knew the venue would be outrageously inconvenient for Defendant to the extent that Defendant is unduly prejudiced. Defendant resides in Connecticut, has always worked in Connecticut, and all of the alleges acts related to Plaintiff's claims occurred in Connecticut. This case must be dismissed for improper venue.

**C.     Motion to Dismiss under 12(b)(6), for Failure to State a Claim: Texas Uniform Trade Secrets Act**

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *CAE Integrated, LLC v. Moov Technologies, Inc.,* Case No. 1:21-cv-377-RP, 2022 WL 4476784 *2, (W.D.Tex., Austin Div., Sept. 26, 2022), citing *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *CAE Integrated*, at 2, citing *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Id.*

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, no such reasonable inference can be drawn. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007), (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.2005)). A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* citing *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir.2004). Hence, MacDonald submits his sworn affidavit in support of this motion as Exhibit A.

Plaintiff alleges that MacDonald misappropriated Flashparking's trade secrets in violation of TUTSA. (Compl. ¶14). The elements of a claim for trade secret misappropriation under TUTSA are: (1) the ownership of a trade secret; (2) the misappropriation of a trade secret; and (3) an injury to the plaintiff or unjust enrichment to the defendant. *BMC Software, Inc. v. International Business Machines Corp.,* 2022 WL 1733106 at \*33, citing *Morris-Shea Bridge Co. v. Cajun Indus., LLC,* No. 3:20-cv-00342, 2021 WL 4084516 at \*6-7 (S.D. Tex. Feb. 22, 2021); *Silverthorne Seismic, LLC v. Sterling Seismis Servs., Ltd.,* No. H-20-2543, 2021 WL 4710813, at \*4 (S.D. Tex. Oct. 7,

2021); Tex. Civ. Prac. & Rem. Code §134A.004. To survive a motion to dismiss, Plaintiff must satisfy plausibility of each element.

       1.     <u>Plaintiff's claims for violation of the Texas Uniform Trade Secrets Act (TUTSA) fail to state a claim because plaintiff did not allege any facts that a trade secret exists.</u>

A plaintiff bringing a misappropriation of trade secrets claim must allege facts that would show that a trade secret existed. *Vest Safety Medical Services, LLC v. Arbor Environmental, LLC*, 2020 WL 4003642 *3-4, (S.D. Texas, H. Div., Civ. No. H-20-0812, July 15, 2020), citing *GE Betz. Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir.2018). TUTSA , Sec. 134A.001(6), defines "trade secret" as:

> [A]ll forms and types of information ... if:
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Texas courts weigh six factors to determine whether a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Globe Ranger Corp. v. Software AG United States of America, Inc.*, 836 F.3d 477, 492 (5th Cir. 2016). The existence of a trade secret is a question of fact. <u>Id.</u> Hence, the issue before the court is therefore whether Plaintiff has alleged sufficient facts which, taken as true, would support that a trade secret exists. The short answer is, no. Plaintiff has failed to plead facts that Flashparking took any measure to protect the transaction information; that the transaction information has any value; whether Defendant was the only one responsible for the security of this information or whether other employees knew of or had access to the transaction information (Exh. A ¶16); nor did

Plaintiff plead that the transaction information is not readily accessible or known outside of Flashparking. In fact, Plaintiff wholly fails to state why or how this transaction information is "highly confidential" or "critical" or how it may be harmed if this information is shared with a third party. Blanket, ambiguous statements about a company's business information does not make a trade secret.

Hence, the pleaded facts and the affidavit attached to the complaint do not suffice to plausibly establish that the "Flashparking digital customer transactions" was kept secret or derives economic value from its secrecy. Flashparking did not allege sufficient facts which, taken as true, would support that a trade secret exists. Therefore, this claim must be dismissed.

2.    <u>Plaintiff's claims for violation of the Texas Uniform Trade Secrets Act fail to state a claim of misappropriation of trade secrets because, even if the Court determines that the existence of trade secrets were sufficiently pled, MacDonald did not improperly disclose, or use, the trade secrets of Flashparking.</u>

Plaintiff's claim for misappropriation of trade secrets fails because Plaintiff fails to properly plead misappropriation.

> The law defines misappropriation as (1) "disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret" or (2) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Tex. Civ. Prac. & Rem. Code Sec.134A.002(3). Under this definition, misappropriation requires disclosure of material improperly attained.

Plaintiff does not allege that MacDonald disclosed the trade secret information to anyone. Rather, Plaintiff claims that he used the trade secret information in a ChatGPT AI search, during his employment with Plaintiff. (Compl. ¶11). What Plaintiff failed to disclose in its Complaint, and what is stated in MacDonald's affidavit, is that not only was this information used in the scope of his employment, but with the knowledge of Plaintiff. Hence, there was no disclosure by MacDonald of any trade secret information to anyone and the Complaint is void of any fact that

proves different.

Further, there was no improper means of acquiring this information by MacDonald, because to Plaintiff's own admission, he had access to this information in the course and scope of his employment and in his role as The Director of Product Operations. (Compl. ¶9). MacDonald performed his job responsibilities to research and develop new business ideas for Plaintiff and did this by using parking transaction information in an AI search for the benefit of Plaintiff. Moreover, the record is devoid of any evidence that suggest that MacDonald transferred the information to a third party, used it for his own purposes and benefit, or was planning to use it for his own purposes or benefit.  Hence, this claim fails and must be dismissed with prejudice.

       3.     <u>Plaintiff fails to allege damages</u>

Plaintiff fails to allege that it has suffered damages from the alleged taking of transaction information. Rather, it only states baseless legal conclusions or unsupported predictions of future behavior. Plaintiff fails to allege how it was injured by Defendant's alleged misappropriation. Plaintiff fails to allege that Plaintiff used the parking transaction information for his own benefit. A claim for violation of TUTSA cannot be based on crystal ball predictions that are not supported by any facts. Defendant's failure to allege any injury defeats his claim. This claim must be dismissed.

**D.     Motion to Dismiss under 12(b)(6), for Failure to State a Claim: Attorney's Fees**

   Pursuant to Texas Code Sec. 134A.005, the court may award reasonable attorney's fees to the prevailing party if:

       "(1)  a claim of misappropriation is made in bad faith;
       (2)  a motion to terminate an injunction is made or resisted in bad faith; or
       (3)  willful and malicious misappropriation exists."

Here, Plaintiff only alleges legal conclusions and fails to allege facts related to misappropriation, fails to allege facts of bad faith, and fails to allege facts of willful acts. Hence, Defendant fails to state a plausible claim for attorney's fees, and therefore such claim must be dismissed.

**E.      Motion to Dismiss under 12(b)(6), for Failure to State a Claim: Injunctive Relief**

Defendant objects to the temporary injunction ordered in this matter and moves to dismiss. On a claim for injunctive relief,  Plaintiff's pleading burden is substantially higher than a 12(b)(6) analysis. In *Blue Yonder Group, Inc. v. Kinaxis, Inc.*, 2021 WL 3674104 at *3 (N.D. Texas, Dallas Div., July 21, 2021),  on a motion to dismiss defendant's motion for preliminary injunction, the Court emphasized this reasoning, "The Court first notes that a Rule 12(b)(6) analysis of a claim is a much different analysis than whether or not a party is entitled to a preliminary injunction. Under a Rule 12(b)(6) analysis all that is needed to defeat a motion to dismiss is the pleading of plausible facts that are accepted as true to show the claimed relief is plausible on its face. This is a relatively low burden. <u>On the other hand, a preliminary injunction is extraordinary relief that requires a party to strictly prove all elements for entry of a preliminary injunction in order to survive a motion to dismiss</u>. [*Emphasis added, citing*] *Harris Cnty. v. CarMax Auto Superstores, Inc*., 177 F.3d 306, 312 (5th Cir.1999). *Ass'n of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 2d 693, 696 (N.D. Tex.2010)(Kinkeade, J.). The elements of a preliminary injunction are: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable harm; (3) the threatened injury outweighs any damage that the injunction might cause; (4) and the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.* 532 F.3d 364, 372 (5th Cir.2008). This burden is substantially higher than the pleading burden under a Rule 12(b)(6) analysis."

1.      Plaintiff's case will not succeed on the merits.

The Plaintiff fails to allege plausible facts that they will succeed on the merits.  The one document that is attached to the Complaint as Exh.A-1, and that Plaintiff presents as "evidence" that Defendant "stole" Flashparking parking transaction information is an AI search that was performed by MacDonald more than two months prior to his termination and was done in the course and scope of his employment and for the benefit of Flashparking. Exh. A ¶¶38, 152-155. In fact, after the AI search failed, there were two meetings with his coworkers, both inviting the CTO, Anthony Broad Crawford, where his research was discussed in depth. *Id.* The AI search was MacDonald, using terms and language to prompt AI to return the sort of information he was researching. Exh. A ¶¶32-35. Moreover, Plaintiff failed to attached the entire Exhibit (as attached hereto as Exh.B) that shows MacDonald forwarded the search to himself  (on May 8, 2023, over a month before his termination) as a matter of record keeping for work and titled it "not relevant." Exh. A ¶36. The AI report was labeled "not relevant" as it did not bear the result MacDonald was hoping to find  after exploring new potential business opportunities for Flashparking. As stated *supra*, Plaintiff fails to plead plausible facts of trade secrets taken, nor any misappropriation of trade secrets. Because Plaintiff fails to plead plausible facts of misappropriation it must be concluded that Plaintiff has failed to prove actual or possible irreparable harm.

<u>2.      There is no substantial threat that the movant will suffer irreparable harm.</u>

Plaintiff has failed to plead that it has been harmed. Plaintiff fails to plead that MacDonald used the parking transaction information outside of his scope of employment. Plaintiff fails to plead that the transaction information was given to any third person by MacDonald. All Plaintiff has alleged is that MacDonald used transaction information to create an AI search and do his job, and sent the report created by the AI search to his work email, on his work laptop, and labeled it "not relevant." This was all done two months prior to his termination and for the benefit of

Flashparking. There is no harm that has come to Flashparking, or that could potentially come to Flashparking because MacDonald does not have any of its property and the only time he used its property was in the course and scope of his employment. But instead of asking MacDonald if he had this transaction information, or if he intended to use it, or asking him ANYTHING about his use of Flashparking's property before or after his termination, Plaintiff just filed a lawsuit with no reasonable investigation. This lawsuit is vexatious, and MacDonald is the one who has suffered harm from Flashparking unwarranted and groundless claims against him.

     3.     <u>There is no threat of injury to Plaintiff.</u>

There is no threatened injury. None. MacDonald has no Flashparking parking transaction information and has only ever used this information in the course and scope of his job. There are no allegations that he actually transferred the information to another or that he used the information to start a new business. There is no evidence of potential harm.  On the other hand, Flashparking, maliciously restrained MacDonald, without reasonable inquiry and without a hearing, from pursuing gainful employment and supporting his family.  Mr. MacDonald lives in Fairfield, Connecticut and has young children and a wife to support. Flashparking is a multimillion dollar company, that has a valuation of over one billion dollars. Plaintiff has presented no evidence of any harm or potential harm caused by MacDonald.  Here, the damage the injunction has caused to MacDonald well outweighs the zero damage he allegedly caused to Flashparking.

     4.     <u>The injunction will disserve the public interest.</u>

The injunction is a disservice to the public interest.  The public has an interest in efficiency in parking in public places. MacDonald's job, and one of his job duties, was to create more efficient parking processes and research and develop how these processes could be adapted to new areas of

transportation.  To enjoin him from working in his industry would disserve the public of new and efficient parking applications throughout various transportation vehicles and apparatus.

Plaintiff cannot satisfy its greater burden to prove all elements of preliminary injunction and therefore this claim must be dismissed.

### F.    Motion to Transfer Venue

If this matter is not dismissed pursuant to Fed. R. Civ. P. 12(b), Defendant requests that venue be transferred to United States District Court, District of Connecticut, pursuant to 28 U.S.C.A. §1404, for the convenience of the Defendant, and because that is where, for all times relevant, the Defendant worked and resides, and where all causes of actions alleged by Plaintiff, occurred.

28 U.S.C.A. §1404(a) provides: A change of venue may be had (a) for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

There can be no question but that the district courts have "broad discretion in deciding whether to order a transfer." *Balawaider v. Scott*, 160 F.3d 1066, 1067 (5th Cir.1998)(quoting *Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir.1987). The preliminary question under §1404(a) is whether a civil action "might have been brought" in the destination venue. *Id.*

The *Volkswagon* Court reasoned, "When no special, restrictive venue statute applies, the general venue statute, 28 U.S.C. §1391, controls a plaintiff's choice of venue. Under §1391(a)(1), a diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." Under § 1391(c), when a suit is filed in a multi-district state, like Texas, a corporation is "deemed to reside in any district in that State within which its contacts

would be sufficient to subject it to personal jurisdiction if that district were a separate State." Because large corporations, like Volkswagen, often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues, the general venue statute "has the effect of nearly eliminating venue restrictions in suits against corporations." 14D Wright, Miller & Cooper, *Federal Practice & Procedure* §3802 (3d ed.2007) (noting also that, because of the liberal, general venue statute, "many venue disputes now are litigated as motions to transfer venue under Section 1404 of Title 28")." *In re Volkswagon of America, Inc.*, 545 F.3d 304, 312-313, 89 U.S.P.Q.2d 1501 (5th Cir.2008).

Moreover, the underlying premise of §1404(a) is that courts should prevent plaintiffs from abusing their privilege under §1391 by subjecting defendants to venues that are inconvenient under the terms of §1404(a). *See Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501. 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("[The general venue] statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts.... But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment."). Thus, while a plaintiff has the privilege of filing its claims in any judicial division appropriate under the general venue statute, §1404(a) tempers the effects of the exercise of this privilege.

Additionally, Defendant can easily show good cause to transfer venue. As to the appropriate standard set forth in *Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.2d 53, 1964 A.M.C. 315 (5th Cir.1963), the Court noted that "the avoidance of dismissal through §1404(a) lessens the weight to be given" to the plaintiff's choice of venue and that, consequently, "he who seeks the transfer must show good cause." *Id.* at 56. This "good cause" burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the

context of §1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. <u>When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer</u>. Emphasis added. *In re Volkswagon*, 545 F.3d at 314.

Here it is clear that Connecticut is more convenient than Texas. Defendant has no contacts with Texas, resides in Connecticut, worked in Connecticut and all the alleged acts of Defendant took place in Connecticut. Flashparking is a national company and is in a much better position to litigate a lawsuit in a distant forum than Defendant. In fact, Flashparking has a registered agent in Connecticut, an active business listing and does business in the state. (US-CT.BER:1330845and lists its registered agent in Connecticut as CT Corporation System at 67 Burnside Avenue, East Hartford, CT  06108-3408). Plaintiff has availed itself to the jurisdiction of a Connecticut federal court, and that is where venue should lie. Venue should be transferred to United States District Court, District of Connecticut.

## III.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the court grant the instant motion and award defendant his attorney's fees related to this motion to dismiss and related to this litigation. A motion and order for attorney fees will be submitted for the Court's consideration upon its Order.

Respectfully Submitted,

DEFENDANT
MICHAEL SELLERS MACDONALD

*By:/s/ Kirsten M. Schneider*
Kirsten M. Schneider
Admitted Pro Hac Vice
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
kschneider@capclaw.com
His Attorney

CERTIFICATION OF SERVICE

Pursuant to Efiling federal and local rules, this is to certify that on August 10, 2023, a copy of the foregoing with exhibits was filed electronically on the United States District Court, Western Div. Texas, Austin efiling system, emailed to the parties below, and delivered to all those with access to such efiling system and mailed, postage prepaid, to those parties without electronic access. The electronic transmission was reported as complete.

*/s/ Kirsten M. Schneider*
Kirsten M. Schneider
kschneider@capclaw.com

The foregoing document was emailed to:

FOR PLAINTIFF:
Lessie C. Gilstrap, Esq.
lessie@gilstraplawgroup.com
Glorieni M. Azeredo, Esq.
gazeredo@gilstraplawgroup.com