IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| FLASHPARKING, INC. | § § § | |
| V. | § § | Civil No. 1:23-CV-772-DII |
| MICHAEL SELLERS MACDONALD | § § | |

**PLAINTIFF'S RESEPONSE TO DEFENDANT'S MOTION TO DISMISS
AND, IN THE ALTERNATIVE, MOTIN TO TRANSFER VENUE**

Plaintiff FlashParking, Inc. ("FlashParking") files this Response to the Motion to Dismiss the Complaint for Improper Venue, Forum Non Conveniens, and in the Alternative, Motion to Dismiss for Failure to State a Claim and Motion to Transfer Venue [Doc. 8] and the related Memorandum of Law [Doc. 9] (collectively, the "Motion") filed by Defendant Michael Sellers MacDonald ("MacDonald") as follows:

**SUMMARY**

1. Flash Parking sued MacDonald in state court after learning that MacDonald, while employed with Flash Parking, (i) downloaded confidential files containing over 4 million of Flash Parking's customer transactions, and (ii) then used his company computer to make queries to an artificial intelligence platform seeking ways to use the stolen data to start a new business called "Bingo."

3. <u>Hours after the state court denied MacDonald's special appearance and granted the temporary injunction</u>, MacDonald improperly removed this case to federal court based on diversity jurisdiction, despite the fact that the state court petition in this case specifically pleads that the amount in controversy is less than $75,000.

1

4. MacDonald filed this Motion at the same time that he filed his Response [Doc. 7] to FlashParking's Motion to Remand [Doc. 6].

5. The Court should grant FlashParking's pending Motion to Remand for lack of jurisdiction and deny the Motion as moot. In the unlikely event that the Court reaches the substance of the Motion, the Court should deny it in its entirety because MacDonald has failed to meet his heavy burdens to establish: (1) this case is in an improper venue, (2) the doctrine of *forum non conveniens* applies, or (3) any basis transferring the case to federal court in Connecticut. In addition, the Court should deny the Motion because FlashParking has sufficiently stated a claim under the Texas Uniform Trade Secrets Act.

## FACTUAL BACKGROUND

6. FlashParking is headquartered in Austin, Texas. Ex. A, ¶2. As part of its business, FlashParking has highly confidential information, including but not limited to operating procedures, marketing, advertising, and statistics reflecting parking durations, rates, capacities, and hours of operation for millions of parking transactions at thousands of parking locations across Texas and the United States. Doc. 1-1, p. 5, ¶9. MacDonald, in his role as Director of Product Operations for FlashParking, had access to this highly confidential information. *Id*., p. 5, ¶8.

7. On May 24, 2023, FlashParking's Vice President of People and Culture, Carol Dunnigan, who is located in Austin, Texas, informed MacDonald that his position would be eliminated due to a reduction in force. Doc. 1-1, p. 6, ¶10; Ex. A, ¶6. After the meeting, FlashParking's IT department in Austin accessed MacDonald's email account and discovered he had deleted all of his emails. Doc. 1-1, p. 6; *see also* Ex. A, ¶7. Subsequently, Ms. Dunnigan, in conjunction with FlashParking's IT personnel in Austin, investigated and discovered MacDonald, while still employed at Flash Parking, downloaded over 4 million confidential customer

transactions and then made queries to ChatGPT seeking ways to use the stolen data to start his own company. Doc. 1-1, pp. 5-7; Ex. A, ¶¶7-8.

8. On June 9, 2023, FlashParking filed its Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction against MacDonald in Texas state court (the "Petition"). *See* Doc. 1-1, pp. 4-43. The only cause of action asserted by FlashParking in the Petition is under the Texas Uniform Trade Secrets Act. *Id.*, p. 7.

9. On June 12, 2023, FlashParking obtained a Temporary Restraining Order ("TRO") against MacDonald, restraining him from, among other things, using the confidential information he stole from FlashParking. *See id.*, pp. 46-47. On June 15, 2023, the state court signed a First Amended TRO extending the order until the hearing date on the temporary injunction ("TI") on July 7, 2023. *See id.*, pp. 50-52.

10. Prior to the TI hearing, MacDonald filed several documents with the state court sent several communications to the state court judge arguing that the TI hearing should be continued. *See id.*, pp. 2-3, 56-78; Doc. 6-1, pp. 1, 8; Doc. 6-3. The state court ultimately denied the request for the continuance, announced the TI hearing would proceed on July 7, 2023, and that he would hear MacDonald's Motion for Special Appearance prior to the TI hearing. *See id.*, p. 1; Doc. 6-4.

11. On July 7, 2023, at 9:00 a.m., the state court proceeded with the hearing on (1) MacDonald's Motion for Special Appearance, and (2) Flash Parking's Application for TI. MacDonald did not appear at the hearing, nor did anyone appear from the two law firms representing him. *See* Doc. 3-1, p. 4.

12. The state court first considered MacDonald's Motion for Special Appearance, and after hearing argument, denied it. The state court then heard argument and evidence regarding

3

FlashParking's application for TI. After the conclusion of evidence, the state court orally granted the TI and ordered counsel for FlashParking to submit proposed orders for both of the motions heard that day. Later that same day, on July 7, 2023, the following events occurred:

| | |
|---|---|
| 11:31 a.m. | FlashParking submitted to the state court proposed orders (1) denying MacDonald's Motion for Special Appearance and (2) granting the TI. |
| | <u>MacDonald's counsel was copied on the email submitting these draft orders to the state court judge and therefore knew the court had ruled against him on both motions.</u>[1] |
| 3:06 p.m. | The state court signed the order denying MacDonald's Motion for Special Appearance. *See* Doc. 3-1, pp. 2-3. |
| 3:15 p.m. | The state court signed the TI against MacDonald. *See id.*, pp. 4-7. |
| 6:08 p.m. | Unhappy with the state court's rulings, MacDonald filed his Notice of Removal alleging diversity jurisdiction. *See* Doc. 1; *see also* Doc. 6-6 (reflecting the 6:08 time stamp). |

13. On August 2, 2023, FlashParking filed its Motion to Remand [Doc. 6] which included a motion for attorneys' fees on the grounds that MacDonald had removed the case to circumvent the rulings against him in state court. MacDonald filed his Response to the Motion to Remand [Doc. 7] contemporaneously with the Motion [Docs. 8, 9].

## ARGUMENT AND AUTHORITIES

**A.  Venue is proper under Fed. R. Civ. P. 12(b)(3).**

14. The plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.

---

[1] Doc. 6-5 ("Pursuant to the Court's request and <u>based on the Court's rulings made today</u>, please see Plaintiff's attached proposed orders in both Word and PDF (1) denying Defendant's Motion for Special Appearance and (2) Temporary Injunction.") (emphasis added).

1996).

15.     Strangely, MacDonald only analyzes whether venue is proper under Texas law, specifically Tex. Civ. Prac. & Rem. Code 15.002. Motion, p. 6. However, should the Court deny FlashParking's motion to remand, venue issues in this diversity case should be resolved under federal law, because the issue is procedural rather than substantive. *Jumara v. State Farm Ins.*, 55 F. 3d 873, 877 (3d Cir. 1995). Accordingly, 28 U.S.C. §1391 governs here, not Tex. Civ. Prac. & Rem. Code §15.002, and MacDonald's analysis under §15.002 is irrelevant except to the extent it mirrors federal law. *Id.*

16.     Under 28 U.S.C. §1391, venue is proper in the following circumstances: (1) the defendant resides in the district where suit is brought, (2) a substantial part of the claim occurred in the district where the suit is brought, or (3) a substantial part of the property that is the subject of the action is situated where the suit is brought. 28 U.S.C. §1391(b)(1), (2). Venue is also proper under §1391(b)(3) in any district in which the defendant is subject to the court's jurisdiction, if there is no district where the action can otherwise be brought under §1391. *Id.* at §1391(b)(3).

17.     Venue is proper in this district under §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, <u>and</u> because a substantial part of the property at issue is situated in this district.[2]

18.     As is stated above, this is a theft of trade secrets case based on MacDonald's theft of highly sensitive and confidential files containing over 4 million parking transactions from FlashParking's databases.[3] FlashParking has its headquarters in Austin, Texas, which is in this

---

[2] MacDonald does not analyze in his Motion whether a substantial part of the property at issue was situated in this district.

[3] MacDonald admits to downloading these transactions on April 21, 2023, while he still worked for FlashParking. Motion, pp. 6-7.

district. Ex. A, ¶2; *see also* Ex. 1-1, p. 10, ¶3. The confidential data stolen by MacDonald included operating procedures, marketing, advertising, and statistics reflecting parking durations, rates, capacities, and hours of operation for millions of parking transactions at thousands of parking locations across Texas, including Austin, and across the United States. Ex. A, ¶9; *see also* Ex. 1-1, p. 10, ¶5. Nearly 70,000 of the stolen transactions were derived from activity at parking locations within Austin, Texas. Ex. A, ¶8; *see also* Ex. A, ¶5 (describing from where and how FlashParking's parking data originates). This confidential data was collected, compiled, analyzed, maintained and updated as part of FlashParking's central operations in Austin, Texas. Ex. A, ¶9. Access to this data is based on the employee's position and is granted by FlashParking's IT Department in Austin, Texas for the purpose of protecting FlashParking's confidential data from being leaked from the company or accessed by competitiors. *See* Ex. A, ¶4. In addition, MacDonald's theft of FlashParking's data required him to access applications and databases that are primarily maintained by FlashParking's personnel in Austin, Texas. Ex. A, ¶9. FlashParking's Vice President of People & Culture, Carol Dunnigan, in conjunction with FlashParking's IT personnel, also located in Austin, Texas, investigated and discovered MacDonald's theft as part of their duties in connection with MacDonald's termination, all of which were conducted in of Austin, Texas. Ex. A, ¶8.

19.     Based on these facts, venue is proper under §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—i.e., the creation of the trade secrets at issue and FlashParking's investigation and discovery of Macdonald's theft—occurred in this district <u>and</u> because a substantial part of the property at issue—i.e., FlashParking's trade secrets which are collected, compiled, analyzed, stored, and maintained as part of FlashParking's central operations in Austin, Texas, and nearly 70,000 stolen transactions from parking locations within Austin,

Texas—is situated in this district. Accordingly, the Court should deny MacDonald's motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).[4]

**B.     The Court should deny MacDonald's motion to dismiss for *forum non conveniens*.**

20.     MacDonald asks the Court to dismiss FlashParking's case for *forum non conveniens*. Motion, pp. 7-9. However, this doctrine applies only in cases where the alternate forum is abroad, i.e., not in the United States. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 449, n.2 (1994)) (emphasis added).

21.     When, as here, the defendant argues that a federal court in another state is more convenient, the proper analysis is under 28 U.S.C. §1404(a) which provides for a transfer, rather than dismissal. *Miller*, 510 U.S. at 449, n.2 (noting that the primary case relied on by MacDonald, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) was superseded by 28 U.S.C. §1404(a)).

22.     Here, MacDonald points to no foreign court for an alternative forum. *See, generally,* Motion. The only alternate forum even mentioned by MacDonald is the United States District Court, District of Connecticut. Motion, pp. 5, 17. Accordingly, MacDonald's motion to dismiss for *forum non conveniens* should be summarily denied since that doctrine is not applicable given he has not even attempted to offer any foreign alternate forum.

23.     Even if the doctrine potentially applied here, MacDonald has not met his heavy burden in opposing the plaintiff's chosen forum. *Sinochem*, 549 U.S. at 430. Specifically, the defendant must show that (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal. *Alpine View Co. v.*

---

[4] Alternatively, should the Court determine that venue is not proper in this district, the court may transfer it to a proper venue. *See* 28 U.S.C § 1406(a).

*Atlas Copco AB*, 205 F.3d 208, 221-22 (5th Cir.2000).  As to the first prong, MacDonald has not shown the existence of an available or adequate forum abroad.  *See generally,* Motion.  As to the second prong, MacDonald does not even mention (much less analyze) any private or public factors required to show that dismissal is appropriate.  *See* Motion, pp. 7-9.

24. For these reasons, the Court should deny MacDonald's motion to dismiss for *forum non conveniens*.

**C.  The Court should disregard MacDonald's 41-page affidavit for purposes of his 12(b)(6) motions.**

25. As an initial matter, FlashParking objects to MacDonald's attempt to rely on his own affidavit as support for his motions to dismiss under Rule 12(b)(6).  *See* Motion, p. 10.  As MacDonald himself admits, the Court may only rely on documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [his] claim."  *Id.* (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).  Accordingly, the Court should disregard MacDonald's 41-page affidavit since it was certainly not referenced in FlashParking's state court petition (which was filed months before MacDonald's affidavit was even signed).  *Compare* Doc. 1-1, pp. 4-43 (filed on June 9, 2023) *and* Doc. 9-1, p. 41 (signed on Aug. 10, 2023).

**D.  FlashParking has sufficiently stated a claim under the Texas Uniform Trade Secrets Act ("TUTSA").**

26. MacDonald argues that FlashParking's claim under TUTSA should be dismissed under Rule 12(b)(6) because (1) FlashParking "did not allege any facts that a trade secret exists," (2) MacDonald did not improperly disclose or use the trade secrets, and (3) FlashParking fails to allege damages arising from a violation of TUTSA.  Motion, pp. 9-14.  For the reasons stated below, none of these grounds is a basis for dismissal under Rule 12(b)(6) and the Motion should

8

therefore be denied.

### 1. FlashParking has sufficiently alleged that a trade secret exists.

27. Under TUTSA, a "Trade secret" is broadly defined as:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code §134A.002(6).

28. Here, FlashParking alleged the following facts in its state court petition:

> <u>In his role</u>, MacDonald was exposed and had access to highly confidential information concerning FlashParking's business operations.  Specifically, MacDonald had access to FlashParking's <u>highly confidential business information</u>, including but not limited to <u>operating procedures, marketing, advertising, and statistics reflecting parking durations, rates, capacities, and hours of operation for millions of parking transactions at thousands of parking locations across Texas and the United States</u>.  <u>This information is highly sensitive and critical to FlashParking's ability to offer its unique products and services and maintain its competitive edge in the marketplace</u>.
> . . .
> FlashParking then dug deeper into MacDonald's activity with data, and discovered that on April 19, 2023, <u>MacDonald downloaded data</u> from Looker (a tool used to query, summarize, and visualize data) <u>related to over 4,000,000 FlashParking digital customer transactions, including highly confidential statistics related to customer use such as parking locations (including addresses), capacities, total number of transactions and total amounts of gross revenue</u>. The data set contains information that MacDonald admitted he possessed in his exchange with ChatGPT. <u>This information is highly confidential information belonging to FlashParking and the maintenance of its confidentiality is critical to FlashParking's ability to maintain its competitive edge in the marketplace</u>.

Doc 1-1, pp. 2-4, ¶¶9, 11 (emphasis added).  *See also* Doc. 1-1, pp. 10-11, Broad-Crawford Aff.,

¶¶5-7.

29. MacDonald complains that FlashParking has not adequately alleged details such as whether the stolen transaction information "has any value," whether "Defendant was the only one responsible for the security of this information" or whether the information "is not readily accessible or known of FlashParking." Motion, pp. 11-12. But to the contrary, FlashParking clearly plead that the information MacDonald took was (i) accessible by virtue of his executive role at the company (ii) included highly confidential statistics related to customer use such as parking locations (including addresses), capacities, total number of transactions and total amounts of gross revenue, and (iii) that the maintenance of the confidentiality of the stolen information is "critical to FlashParking's competitive edge in the marketplace." Doc 1-1, pp. 2-4; 10-11.

30. Such allegations are more than adequate to meet the "plausibility" standard under Rule 12(b)(6). *Whitney v. Guys, Inc.*, 700 F. 3d 1118, 1128 (8th Cir. 2012) (the plausibility determination should be made for the claim as a whole, not for each individual allegation); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (there does not need to be a one-to-one relationship between any single allegation and a necessary element of a cause of action).

31. Moreover, since the existence of a trade secret is a question of fact, resolution of the issue is not suitable for resolution on a motion to dismiss since all plausible facts are assumed to be true. *Hybir, Inc. v. Dell Global, B.V.*, 2023 U.S. Dist. LEXIS 15778 (W.D. Tex. Jan. 31, 2023) (citing *General Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004)).

**2.    FlashParking has sufficiently stated a claim for misappropriation of trade secrets.**

32. MacDonald argues that FlashParking failed to state a claim for misappropriation of trade secrets because it did not allege that MacDonald <u>actually disclosed</u> the trade secret

information to anyone. Motion, p. 12. But actual disclosure is not a required element under TUTSA.

33. Under TUTSA, a claimant may seek injunctive relief for "actual <u>or threatened</u>" misappropriation, which is exactly what FlashParking sought here. Tex. Civ. Prac. & Rem. Code § 134A.003 (emphasis added). FlashParking alleged that an injunction was warranted under TUTSA because MacDonald was asking ChatGPT for advice on how to start a new, competitive business using FlashParking's confidential information. Specifically, FlashParking alleged as follows:

> On May 25, 2023, after recovering the deleted emails, FlashParking discovered that on April 21, 2023, MacDonald sent an email from his FlashParking email to his personal email account containing records of his exchanges with ChatGPT or a similar artificial intelligence platform ("ChatGPT") which stated, in part:
> . . .
>
> **I'd like to start a company**.
>
> . . .
>
> Let's chat about my company idea and see if we can perfect the business model . . . I have a few separate ideas . . .
>
> Idea 2- **I have access to information about 50,000,000 parking transactions at 10,000 parking locations across the U.S. This data includes search inquiries about available parking down to a specific point of interest as well as transactional data including parking durations, and parking rates. I also have information about the physical characteristics of the parking location like capacity and hours.**
>
> **Idea 2 involves using the data I have access to** so I can identify parking locations or neighborhoods with parking assets that are underperforming compared to other nearby locations so I can acquire them **. . . .**
>
> MacDonald has not only downloaded 4,000,000 parking transactions from FlashParking's databases, but based on his own admissions using ChatGPT, MacDonald is also clearly intent on using this and other highly confidential information obtained through his employment with FlashParking to give himself a competitive advantage in starting a new business.

11

Doc. 1-1, p. 6-7, ¶¶10,13.

34. Given that an allegation of "actual misappropriation" is not required under TUTSA, and given that FlashParking clearly alleged in the Petition that MacDonald's conduct constituted "threatened misappropriation," which is explicitly covered by TUTSA, MacDonald's motion to dismiss under Rule 12(b)(6) on this ground should be summarily denied.

35. MacDonald also argues that there was no "improper means" of acquiring the information because MacDonald took the information while he was still an employee of FlashParking. However, "improper means" is not the sole path to liability under TUTSA if the defendant took the information while under a duty to maintain its secrecy. *Lifesize Inc. v. Chimene*, 2017 U.S. Dist. LEXIS 64033 at *25 (W.D. Tex. Apr. 26, 2017) (citing Tex. Civ. Prac. Rem. Code § 134A.002(3)(B)(ii)(c)).

36. Here, MacDonald acquired the confidential information while an employee and subject to his duties to maintain its confidentiality. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App—Houston [1st Dist.] 1998) (noting that employees owe a fiduciary duty to maintain the confidentiality of their employers' information acquired during the course of their employment); *see also* Ex. A, ¶4. As is reflected in his ChatGPT inquiries, MacDonald threatened to use FlashParking's confidential information in violation of his duty to keep that information confidential. *See* Doc. 1-1, p. 6-7, ¶¶10,13; *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d at 22. These facts are more than significant to state a viable misappropriation claim under TUTSA. *See id.*

    **3.**    **Allegations of monetary damages are not required under TUTSA.**

37. MacDonald argues that FlashParking's TUTSA claim should be dismissed because FlashParking "fails to allege that it has suffered damages . . . ." Motion, p. 13. But again, TUTSA

allows a claimant to seek injunctive relief for "actual or threatened" misappropriation. Tex. Civ. Prac. & Rem. Code § 134A.003. Although a plaintiff <u>may</u> seek damages, damages is not a required element under TUTSA. Tex. Civ. Prac. & Rem. Code § 134A.004 ("<u>in addition to</u> or in lieu of injunctive relief, a claimant is entitled to recover damages for misappropriation.") (emphasis added).

38.     Here, FlashParking alleged that it sought non-monetary relief and monetary relief of less than $75,000. Doc 1-1, pp. 4-5, ¶5. It also alleged that because of MacDonald's theft of its trade secrets, FlashParking would suffer "immediate and imminent harm <u>for which there is no adequate remedy at law</u>." Doc. 1-1, p. 7, ¶14 (emphasis added). Given that TUTSA allows claimants to obtain injunctive relief for "threatened" rather than "actual" misappropriation—which is what FlashParking did in this case—the presence or absence of allegations of damages is irrelevant to the Court's analysis, and MacDonald's Rule 12(b)(6) on this ground should be denied. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.) ("The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law.").

**E.     FlashParking has sufficiently stated a claim for injunctive relief.**

39.     MacDonald urges the court to dismiss FlashParking's claim for injunctive relief under Rule 12(b)(6), but erroneously suggests that the standard for doing so is the heightened standard that applies when the application for injunctive relief is fully before the Court (rather than under the 12(b)(6) plausibility standard). Motion, pp. 14-17 (citing *Blue Yonder Group, Inc. v. Kinaxis*, 2021 U.S. Dist. LEXIS 159245, *2 (N.D. Tex. July 21, 2021)).

40.     MacDonald's reliance on the *Blue Yonder* case is misplaced. The court in *Blue Yonder* was considering two, separate motions: (1) a motion to dismiss under Rule 12(b)(6), and

(2) a motion for a preliminary injunction. *Id.* at *9. As the *Blue Yonder* court recognized, the two, separate motions before it required the application of two, separate standards. *Id.* The procedural posture of *Blue Yonder* is clearly distinguishable from this case where MacDonald has moved to dismiss FlashParking's application for an injunction pursuant to Rule 12(b)(6). Here, the usual plausibility standard for 12(b)(6) motions applies.

41.     Again, under TUTSA, "actual or <u>threatened</u> misappropriation" may be enjoined. Tex. Civ. Prac. & Rem. Code § 134A.003 (emphasis added); *Cooper Valves, LLC v. Valvtechnologies, Inc.*, 531 S.W.3d 245, 266 n. 12 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Threatened misappropriation will support an injunction."); *Bell Helicopter Textron, Inc.*, 160 S.W.3d at 200 ("The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law."). Since the threat of misappropriation was adequately alleged (*see* ¶¶34-36 *supra*), FlashParking adequately alleged a claim for injunctive relief.

42.     Although MacDonald's briefing is confusing and unclear, to the extent he is seeking to dissolve the state court's injunction under the guise of a Rule 12(b)(6) motion, MacDonald's Motion should be denied. When a case is removed from state court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. The court can modify a preliminary injunction for reasons of equity in light of changes in the facts or other good reasons. *Loudner v. U.S.*, 200 F. Supp. 2d 1146, 1148 (D. S. D. 2002). However, the court cannot modify the preliminary injunction if doing so would fundamentally alter the status of the parties. *Corbin v. Texaco, Inc.*, 690 F2d 104, 105 (6th Cir. 1982). MacDonald has failed to identify in his motion any changed circumstances since the issuance of the preliminary injunction or any other reason for modifying the preliminary injunction—particularly since under TUTSA the threatened disclosure

of trade secrets constitutes irreparable injury as a matter of law. *See Bell Helicopter Textron, Inc.*, 160 S.W.3d at 200.

**F.     FlashParking has sufficiently stated a claim for attorneys' fees under TUTSA.**

43.     Under TUTSA, the court may award attorneys' fees to a prevailing party if "willful and malicious misappropriation exists." Tex. Civ. Prac. & Rem. Code § 134A.005. "Willful and malicious misappropriation" means intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret. *Id.* § 134A.002(7). Here, FlashParking sought attorneys' fees based on the following allegations:

> MacDonald's actions in downloading FlashParking's trade secrets--<u>i.e., 4 million transactions to his personal Mac device for his own business purposes and then asking ChatGPT for assistance with his scheme</u>, was clearly willful and malicious and with conscious disregard of the rights of FlashParking.

Doc. 1-1, p. 8, ¶15 (emphasis added). FlashParking has clearly alleged specific facts supporting its claim for attorneys' fees for "willful and malicious misappropriation" and MacDonald's 12(b)(6) motion on this ground (Motion pp. 13-14) should be denied.

**G.     The Court should deny MacDonald's Motion to Transfer Venue.**

44.     In the alternative, MacDonald asks the Court to transfer venue pursuant to 28 U.S.C. §1404. Motion, pp. 17-19.

45.     When, as here, the case does not involve a forum-selection clause, the defendant has the burden of establishing that a transfer is warranted. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). The burden is not simply that the alternative venue is more convenient, but that it is *clearly* more convenient. *Beijing Meishe Network Tech. Co. Ltd. v. Tiktok, Inc.*, 2023 U.S. Dist. LEXIS 63036 at *5 (W.D. Tex. 2023) (emphasis original). The defendant must support his

motion to transfer venue with discovery, affidavits, or other proof containing detailed fact statements supporting the grounds for the motion, and mere conclusory assertions of inconvenience will not justify a transfer. *Scheidt*, 956 F.2d at 866; *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 & n.2 (3d Cir. 1973). While "clearly more convenient" is not the same as the "clear and convincing" standard, the defendant must show more than a mere preponderance. *Beijing Meishe Network Tech. Co. Ltd.*, 2023 U.S. Dist. LEXIS 63036 at *5-6.

46. In cases not involving a forum-selection clause (such as this case), the defendant must show that the balance of certain private and public interests favors transfer. *Atlantic Mar. Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013). When evaluating the motion to transfer the court has two broad categories of factors to consider: (1) the convenience of the parties and witnesses (i.e., private interests) and (2) the interests of justice (i.e. public interests). *See id.*

47. Here, MacDonald submits a single paragraph of conclusory statements, unsupported by any proof whatsoever, in support of his motion to transfer venue. Motion, p. 19. Specifically, MacDonald states that venue should be transferred to the United States District Court, District of Connecticut for three reasons:

- "Defendant has no contacts with Texas, resides in Connecticut, worked in Connecticut, and all the alleged acts of Defendant took place in Connecticut"

- "FlashParking is a national company"

- "FlashParking has a registered agent in Connecticut . . . Plaintiff has availed itself to the jurisdiction of a Connecticut federal court, and that is where venue should lie."

*Id.*

48. All of these reasons (which are, again, unsupported by evidence) appear to relate to the parties' respective contacts with Connecticut. But while contacts with a state are relevant to

personal jurisdiction, they are not relevant to venue. Moreover, these conclusory statements do not meet the "preponderance of the evidence standard" necessary to show that venue in Connecticut is *clearly* more convenient.

49. Given that MacDonald has failed to meet his burden to show that it is clearly more convenient to transfer because the balance of private and public interests favor his requested transfer, the Court should summarily deny his motion to transfer venue without any further analysis.

50. Even if the Court were to consider the public and private factors, the Court should deny the motion to transfer venue for the following reasons.

51. The plaintiff's choice of forum is typically given great weight and generally should not be disturbed unless it is clearly outweighed by other considerations. *Robinson v. Giarmarco & Bill Co., P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Moreover, the fact that the plaintiff's choice of forum in inconvenient to the defendant is not usually sufficient to warrant changing the venue of the suit. *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964). The defendant has the burden to show that it is not simply shifting inconvenience to the plaintiff. *See Scheidt*, 956 F.2d at 86.

52. In this case, the majority of the key witnesses will be located at FlashParking's headquarters in Austin, Texas, and the most convenient access to the relevant evidence in this case will be through employees located at FlashParking's headquarters in Austin, Texas. *See generally* Ex. A (explaining that the evidence involved is collected, compiled, analyzed, maintained and updated in Austin and identifying six witnesses involved in the investigation of MacDonald's misconduct who all work in Austin). As far as the public-interest factors are concerned, it is clear that this Court will be more familiar with the only cause of action at issue in this case—TUTSA—which is a Texas statute often considered by this Court. *See, e.g., Beijing Meishe Network Tech.*

*Co. Ltd.*, 2023 U.S. Dist. LEXIS 63036 at *28 (denying a motion to transfer venue under §1404(a) in a case involving TUTSA because the Western District of Texas "is better equipped to handle Plaintiff's claims based on Texas law").

53.     Because MacDonald failed to meet his burden to show that the balance of public and private interests favor transfer, his motion to transfer venue should be denied.

## PRAYER

For all the foregoing reasons, FlashParking respectfully requests that this Court deny in its entirety MacDonald's Motion, and grant FlashParking such additional relief to which it may be entitled.

Respectfully submitted,

**GILSTRAP LAW GROUP PC**
1801 E 51st Street, Suite 365-295
Austin, Texas 78723
Telephone: (512) 813-2061

By:     */s/ Lessie C. Gilstrap*
Lessie C. Gilstrap
Attorney-in-charge
Texas Bar No. 24012630
Email: Lessie@gilstraplawgroup.com
Glorieni M. Azeredo
Texas Bar No. 24077840
Email: Gazeredo@gilstraplawgroup.com

ATTORNEYS FOR PLAINTIFF
FLASHPARKING, INC.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 24th day of August, 2023, the foregoing was served upon counsel of record through the Court's CM/ECF filing system:

Sean D. Johnson
REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, TX 78746
sjohnson@reidcollins.com

Kirsten M. Schneider
Carey & Associates, P.C.
71 Old Post Road
Suite One Southport, CT 06890
kschneider@capclaw.com

*Attorneys for Defendant*
*Michael Sellers MacDonald*

                                                      */s/ Lessie C. Gilstrap*
                                                      Lessie C. Gilstrap